IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| STEVENS VAN LINES, INC., ET AL., Plaintiffs | |
| v. | No. 05-1278C (Judge Smith) |
| THE UNITED STATES, Defendant | |

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

ALAN F. WOHLSTETTER
DENNING & WOHLSTETTER
815 Connecticut Avenue, N.W.
Suite 500
Washington, D.C. 20006
Tel: (202) 833-8884
Fax: (202) 833-8886
Attorneys for Plaintiffs

STANLEY I. GOLDMAN
DENNING & WOHLSTETTER
Of Counsel

May 12, 2006

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................ ii

INDEX TO PLAINTIFFS' APPENDIX ........................................... iii

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ......................... 1

QUESTION PRESENTED ......................................................... 1

STATEMENT OF THE CASE ...................................................... 2

ARGUMENT ......................................................................... 4

I. THIS CASE IS APPROPRIATE FOR DECISION ON SUMMARY JUDGMENT ......................................................................... 4

II. PLAINTIFFS ARE ENTITLED TO REIMBURSEMENT OF THE POWERTRACK FEE BASED ON SDDC'S CONSISTENT AND REPEATED ADVICE THAT TSPS WOULD BE REIMBURSED UNTIL PHASE II OF FAMILIES FIRST BECAME EFFECTIVE .......... 5

III. PLAINTIFFS ARE ENTITLED TO <u>QUANTUM MERUIT</u> COMPENSATION FOR BILLING BY POWERTRACK AS AN ADDITIONAL SERVICE NOT REQUIRED BY THE SOLICITATION AT THE TIME OF RATE SUBMISSION .......................................... 19

CONCLUSION ...................................................................... 23

# TABLE OF AUTHORITIES

Page

## I. CASES


Allstates Van Lines Corp. v. United States, 215 Ct. Cl. 1075 (1978)........21, 22

American Ensign Van Services v. United States, 220 Ct. Cl. 681 (1979)........................................................................21, 22

Channelle v. Citicorp Nat. Services, Inc., 89 F.3d 379 (7th Cir. 1986)...... 17

Cincom Sys. v. United States, 37 Fed. Cl. 663 (1997)...................... 4

* Fox Valley Engineering v. United States, 151 Ct. Cl. 228 (1960)...........14, 16

Golden Pacific Bancorp. v. United States, 15 F.3d 1066 (Fed. Cir. 1994).. 4

* H. Landau & Company v. United States, 886 F.2d 1233 (Fed. Cir. 1989)..............................................................13

* Max Drill, Inc. v. United States, 427 F.2d 1233 (Ct. Cl. 1970)..............14, 15

* Sipco Services & Marine, Inc. v. United States, 41 Fed. Cl. 196 (1998)........................................................................14

* Trans Ocean Van Service v. United States, 426 F.2d 329 (Ct. Cl. 1970)... 21, 22

Trauma Serv. Group v. United States, 104 F.3d 1321(Fed. Cir. 1997)......12

United States v. Bissett-Berman Corp., 481 F.2d 764 (9th Cir. 1973)........13


## II. RULES OF THE COURT OF FEDERAL CLAIMS


Rule 56(c)..................................................................4


## III. OTHER AUTHORITIES


17A AmJur 2d, Contracts, §507................................................. 17


* Cases chiefly relied upon.

# INDEX TO PLAINTIFFS' APPENDIX


| | Page |
|---|---|
| Declaration of Terry R. Head, President, Household Goods Forwarders Association of America, Inc. (HHGFAA) | 1 |
| Attachments: | |
| 1A. Original Item 426a – Solicitation I-16 (IW05), Billing | 5 |
| 1B. Revised Item 426a – Solicitation I-16 (IW05), Billing | 6 |
| 2. SDDC Message, October 31, 2005 | 7 |
| 3. Letter from T. Head to Col. Steven L. Amato, SDDC, November 2, 2005. | 8 |
| 4. Letter from T. Head to Col. Steven L. Amato, SDDC, November 4, 2005. | 11 |
| 5. E-mail from T. Hicks, SDDC to T. Head, and e-mail from T. Head to SDDC, November 9, 2005. | 13 |
| 6. E-mail from Col. Steven L. Amato, SDDC to T. Head, November 10, 2005 | 14 |
| | |
| Declaration of Joseph M. Harrison, President, American Moving & Storage Association (AMSA) | 15 |
| Attachment: | |
| 1. Letter from Col. Thomas Keller, SDDC, to J. Harrison, January 24, 2005. | 20 |
| | |
| Declaration of Scott Michael, Vice President, Government Traffic (AMSA) | 22 |
| Attachments: | |
| 1. E-mail from S. Michael to S. Savage, IBM, June 7, 2005. E-mail from S. Savage to S. Michael, June 8, 2005. | 29 |
| 2. Email from S. Michael to G. Thomas, SDDC, August 9, 2005. | 30 |
| 3. E-mail from G. Thomas to S. Michael, August 10, 2005. | 31 |
| 4. Solicitation D-10 (DW05), Item 430, Items Excluded from Rate Percentage Application. | 32 |
| 5. Solicitation D-10 (DW05), Billing Procedures/Instructions, October 1, 2005. | 34 |

| | Page |
|---|---|
| Declaration of Randall K. Groger, President, Air Land Forwarders, Inc. | 35 |
| Attachments: | |
| 1. Military Bases in Addition to Air Force Bases, Not Available for Billing by PowerTrack at Time of IW05. | 38 |
| Declaration of Margaret (Peggy) Wilken, Vice President, Stevens Van Lines, Inc. | 39 |
| Attachments: | |
| 1. E-mail from Peggy Wilken re Phase I Families First – PowerTrack/CWA, August 26, 2005. | 44 |
| 2. Solicitation D-10 (DW05), Change 3, November 30, 2005 | 47 |
| 3. Military Bases Not Listed as PowerTrack-Certified. | 49 |
| 4. Solicitation D-10 (DW05), Item 430, Items excluded from Rate Percentage Application. | 50 |
| Declaration of Charles L. White, Director of Government & Military Relations, HHGFAA | 52 |
| Attachments: | |
| 1. E-mail from C. White to G. Thomas, SDDC, June 30, 2005. | 56 |
| 2. E-mail from G. Thomas to C. White, June 30, 2005. | 57 |
| 3. E-mail from G. Thomas to S. Michael, August 10, 2005. | 58 |
| 4. E-mail from C. White to G. Thomas, August 12, 2005. E-mail from G. Thomas to C. White, August 12, 2005. | 59 |
| 5. SDDC Families First Phase I FAQ – Web site Posting – August 2005. | 60 |
| Declaration of Brandon Day, Chief Executive Officer, The Day Companies, Inc. | 61 |
| Attachments: | |
| 1. E-mail from S. Fuchtman, The Day Companies, to G. Thomas, SDDC, July 29, 2005. E-mail from G. Thomas to S. Fuchtman, July 29, 2005. | 66 |
| 2. XRS News, 1% PowerTrack Fee, July 29, 2005. | 67 |
| 3. SDDC Families First Phase I FAQ, August 2005. | 68 |
| 4. XRS Newsletter, 4th Quarter 2005, "Changes in Store for PowerTrack Fee. | 69 |
| Federal Register Notice, 70 F.R. 5616-5617, February 3, 2005. | 70 |

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| STEVENS VAN LINES, INC., ET AL., Plaintiffs v. THE UNITED STATES, Defendant | No. 05-1278 (Judge Smith) |

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"), plaintiffs Stevens Van Lines, Inc., et al., respectfully move the Court for a summary judgment in plaintiffs' favor. In support of this Motion, plaintiffs rely on the complaint, Plaintiffs' Proposed Findings of Uncontroverted Fact and Appendix and plaintiffs' brief.

QUESTION PRESENTED

Whether SDDC can lawfully deny plaintiffs' claims for reimbursement of the PowerTrack fees paid for billings on shipments tendered during traffic cycles IW05 and DW05 in light of the consistent written and oral advices of SDDC that such fees would be reimbursed when SDDC's advice to the contrary was given to plaintiffs after they filed their rates.

## STATEMENT OF THE CASE

This case arises under the procurement administered by defendant's Surface Deployment and Distribution Command (SDDC) for the transportation of household goods and unaccompanied baggage of military service members and their families. Plaintiffs are Transportation Service Providers (TSPs) who contracted with SDDC to provide the transportation services required by the solicitations issued for the traffic cycles IW05 and DW05, covering the periods October 1, 2005 – March 31, 2006, and November 1, 2005 – April 30, 2006, respectively.[1]

At issue is whether SDDC is obligated to reimburse plaintiffs for fees paid to U.S. Bank for billings mandated by SDDC to be made by PowerTrack for servicing shipments tendered in IW/DW05. As established by the facts, SDDC mandated that TSPs bill by PowerTrack during IW/DW05 and agreed that TSPs are to be compensated for the fees charged by U.S. Bank for the use of PowerTrack. The dispute is whether TSPs were to be compensated by increasing their IW/DW05 rates to cover the PowerTrack fees, as SDDC now contends, or whether SDDC is obligated to reimburse TSPs for payment of these fees because of SDDC's continuing, consistent advice, prior to the final rate filings, that it would continue such reimbursement until a new procurement, referred to as DPS or Phase II of Families First, became effective.

---

[1] Although the solicitations are technically identified as I-16 and D-10, respectively, they are customarily referred to by the traffic cycle they cover, i.e. IW05 and DW05 and will be so identified in this pleading.

As shown by Plaintiffs' Proposed Findings of Uncontroverted Fact, filed with this Motion, plaintiffs' claim for reimbursement of the PowerTrack fee is based on the consistent advice of SDDC, both oral and in writing, prior to the final rate filings for IW05 and DW05, that SDDC would continue to reimburse the PowerTrack fee until Phase II of Families First became effective. That this advice was given to the household goods industry is documented in e-mails from SDDC's designated representative on PowerTrack, George Thomas, in which he consistently stated that the reimbursement of the PowerTrack fee would continue until commencement of Phase II of Families First; by the Declarations of Terry R. Head and Charles L. White of the Household Goods Forwarders Association of America (HHGFAA); of Joseph Harrison and Scott Michael of the American Moving & Storage Association (AMSA); of Brandon Day of The Day Companies, who made PowerTrack billings for 369 TSPs; of Margaret Wilken of Stevens Van Lines, Inc., representative of TSP participants in the DW05 procurement; and of Randall K. Groger of Air Land Forwarders, Inc., representative of TSP participants in the IW05 procurement.

As shown by the proposed facts, during the four-month period during which George Thomas consistently advised industry that TSPs would continue to be reimbursed for the PowerTrack fee during DW05 and IW05 SDDC never challenged these advices and did not advise TSPs of its conflicting conclusion until

October 31, 2005, three months after the final rates were filed for IW05 and two months after the final rates were filed for DW05.

Plaintiffs maintain that they are entitled to compensation for the PowerTrack fee on the basis of the record and for the reasons stated in this brief in support of their motion for summary judgment.

## ARGUMENT

### I. THIS CASE IS APPROPRIATE FOR DECISION ON SUMMARY JUDGMENT.

Summary judgment in favor of plaintiffs is warranted where there is no genuine issue as to any material fact and the record before the Court establishes that plaintiffs are entitled to judgment as a matter of law. RCFC 56 (c); Golden Pacific Bancorp v. United States, 15 F.3d 1066, 1071 (Fed. Cir. 1994); Cincom Sys. v. United States, 37 Fed. Cl. 663, 670 (1997).

As set forth in Plaintiffs' Proposed Findings of Uncontroverted Fact, filed herewith, there is no dispute that SDDC required plaintiffs to bill by PowerTrack and that defendant has agreed TSPs are entitled to compensation for the fees paid to U.S. Bank for billing by PowerTrack. The issue presented to the Court is limited to the question of whether defendant is obligated to reimburse plaintiffs for the fees paid to U.S. Bank during IW05 and DW05 or whether plaintiffs should have included the PowerTrack fee in their filed rates. Plaintiffs rely on the consistent oral and written advice of SDDC, given prior to the final rate filings, principally from SDDC's designated representative on PowerTrack matters,

George Thomas, that SDDC would continue to reimburse the PowerTrack fee until Families First Phase II becomes effective. Since there is no dispute as to the facts on which plaintiffs rely, this a proper matter to be handled by summary judgment.

## II. PLAINTIFFS ARE ENTITLED TO REIMBURSEMENT OF THE POWERTRACK FEE BASED ON SDDC'S CONSISTENT AND REPEATED ADVICE THAT TSPs WOULD BE REIMBURSED UNTIL PHASE II OF FAMILIES FIRST BECAME EFFECTIVE.

The facts establish beyond dispute that SDDC's authorized representative, George Thomas, consistently and repeatedly advised industry, orally and in writing, prior to the final rate filings, that SDDC would continue to reimburse TSPs for the PowerTrack fee paid to U.S. Bank until Phase II of Families First became effective. At a Business Progress Working Group meeting on January 5, 2005, SDDC's then Chief of Personal Property, Tom Hicks, and SDDC's designated representative on PowerTrack, George Thomas, advised that SDDC would continue to reimburse TSPs for the PowerTrack fee until Phase II of Families First became effective. In subsequent meetings with industry and conference calls during the first half of 2005 this advice remained unchanged. (P1. Fact No. 9).[2]

SDDC designated George Thomas as its official responsible for advising TSPs on matters relating to billing by PowerTrack. (P1. Fact No. 9). Mr. Thomas briefed TSP representatives on PowerTrack matters and was the SDDC official who responded to questions on PowerTrack matters. He advised Scott Michael,

---

[2] The reference "P1. Fact No. __" is to a paragraph of Plaintiffs' Proposed Findings of Uncontroverted Fact filed with this Motion.

Vice President – Government Traffic of AMSA on several occasions to direct all inquiries on PowerTrack to him. (Pl. Fact No. 9). Further, Steven Savage, an employee of IBM, an SDDC contractor on PowerTrack, changed his advice after conferring with George Thomas. (Pl. Fact Nos. 10, 12). As we show below, Mr. Thomas consistently stated in writing in response to inquiries that the PowerTrack fee would be reimbursed until Phase II of Families First and posted that information on SDDC's Web site without any indication from anyone at SDDC that his actions were incorrect or beyond his authority.

Before the postponement of Phase II was formally announced, Scott Michael learned that Families First might be postponed. This prompted Mr. Michael to ask Mr. Steven Savage whether SDDC would continue to reimburse the PowerTrack fee so long as Phase I continued. By e-mail, dated June 7, 2005, Mr. Michael stated:

> "Attached is the list of changes in the Rate Solicitation for the current program, effective October 1 [otherwise known as the backup in case Families First is postponed]. I don't see any indication that the 1% PowerTrack fee will no longer be covered by the Government. We had been led to believe that this fee was tied to Phase I, and thus would be covered so long as we're in Phase I."
>
> "Incidentally, I liked your answer to the question on the delay. Kind of refreshing to get a straight answer on that issue." (Pl. Fact No. 10).

Mr. Savage responded by e-mail June 8, 2005:

> "I stand corrected, I checked and as I understand it now you are correct, the 1% fee will coincide with Phase II." (Pl. Fact No. 10).

On June 22, 2005, Phase II of Families First (DPS) was postponed until February 1, 2006. (P1. Fact No. 8). As a result the current program, Phase I, was continued with IW05 to commence on October 1, 2005 and DW05 to commence on November 1, 2005. On June 22, 2005, TSPs were in the process of determining their me-too rates which had to be filed with SDDC by July 28, 2005 for IW05 and August 26, 2005 for DW05. (P1. Fact Nos. 6, 7).

Charles White, Director of Government & Military Relations of HHGFAA, by e-mail, June 30, 2005, to George Thomas, SDDC's designated representative on PowerTrack, requested advice as to whether SDDC was going to continue to reimburse TSPs for the PowerTrack fee during IW05:

> "Now that Families First has been delayed I've had a number of inquiries from our membership concerning the 1% PowerTrack fee. Will this continue to be a pass through charge during the next rate cycle (IW05)? It is unclear to me after reading the I-16 solicitation as to whether it will continue. I'm not sure that this was even envisioned since the solicitation was written well before a delay had been mentioned." (P1. Fact No. 11).

Mr. Thomas responded to Mr. White by e-mail, June 30, 2004:

> "I am at an offsite today and tomorrow, was fortunate to access my e-mail. Yes, the 1% will continue as a pass through until DPS comes on line ever how long it takes.
>
> "You are by far, not my worst nightmare. Would love for industry to understand that we do work (hard) toward resolving their issues, timely. When raised, they don't go into a black hole, we do take action as you can attest." (P1. Fact No. 11).

By e-mail, dated August 9, 2005, Scott Michael likewise requested George Thomas to confirm Mr. Savage's advice of June 8, 2005, that the PowerTrack fee was to be reimbursed until Phase II:

> "Can you please confirm that Steve's information is correct?" (P1. Fact No. 12).

George Thomas replied to Mr. Michael by e-mail, dated August 10, 2005:

> "Just returned from Business Travel and am just now receiving your e-mail. Don't know how many times I will have to answer this question but here goes....
>
> "The TSP 1% reimbursement fee will continue for all TSPs participating in Phase I until DPS rolls out in Feb. 06. Pls [please] note that all TSPs must factor this into their rates for DPS so when it does roll out, they will receive compensation.
>
> "However for now and during the remaining time of Phase I, they will bill the 1% fee the same way they are now. Billing for the 1% fee will cease when DPS rolls out.
>
> "Hopefully this answers your question." (P1. Fact No. 12).

Another inquiry to Mr. Thomas was made by Sue Fuchtman of The Day Companies, a billing and audit service provider for many TSPs, by e-mail, dated July 29, 2005:

> "**Subject**: 1% powertrack fee.
>
> "Is that still a billable charge to the government as of 11-1-05. I am seeing an email flying around saying no longer."

Mr. Thomas responded to Ms. Fuchtman by e-mail, July 29, 2005:

> "As discussed, TSPs have to incorporate the 1% into their rates when they file them in DPS on 1 Nov. 05. The government will continue to pay the 1% until DPS rolls out." (P1. Fact No. 13).

On July 29, 2005, the Day Companies issued its XRS newsletter to the many TSPs for whom it performed PowerTrack billings advising of Mr. Thomas's advice that the PowerTrack fee reimbursement would continue until DPS rolls out, stating:

> "We have had some questions from customers about the 1% PowerTrack fee, and when it will no longer be billable back to the government. We have confirmed with SDDC that the government will continue to pay the 1% fee until DPS rolls out, currently scheduled for February 2006." (P1. Fact No. 14).

On August 12, 2005, Charles White sent the following e-mail to George Thomas:

> "Since your e-mail exchange with Scott on the 1% fee I have had members coming out of the woodwork asking me this same question about the 1% fee. I guess word gets out around our industry in a hurry but it's not always the correct word! I thought, as you did, that this had been clarified months ago.
>
> "Would it be possible to put this up as an FAQ [Frequently Asked Question]? That way I could refer my members to the SDDC for an 'official' answer. If the answer would just say that the billing for the 1% fee has been extended until the beginning of Phase II in February it would be perfect! I know when the RFO [Request for Offers] comes out I will be hammered with this question once again.
>
> "Any help you can offer would be helpful. THANKS!!!" (P1. Fact No. 15).

George Thomas responded by e-mail, August 12, 2005:

> "By putting this up as a FAQ, it still will not resolve the issue. Been that route many times but will honor your request.
>
> "Steve and Charlie, please capture the TSP 1% Fee as a FAQ and post to the SDDC web site for me." (P1. Fact No. 15).

On August 17, 2005, SDDC made the following posting on its Web site:

> **"How long will the government reimburse the Carriers the 1% PowerTrack fee?**
>
> "The TSP 1% reimbursement will continue for all TSPs participating in Phase I until DPS rolls out in February 2006. Please note that all TSPs must factor this into their rates for DPS so that when it does roll out, they will receive compensation. However for now and during the remaining time of Phase I, TSPs will bill the 1% fee the same way they are now. Reimbursement of the 1% will cease when DPS rolls out. (P1. Fact No. 16).

SDDC's advice was relied on by TSPs. Ms. Margaret Wilken of Stevens Van Lines transmitted the above SDDC Web site posting in instructions to her organization, stating:

> "This link documents the fact that SDDC will reimburse us for the PowerTrack fee until Phase II of Families First is implemented. Please make sure we keep a copy of this somewhere in case this is ever disputed." (P1. Fact No. 17).

Each of the above requests was made to George Thomas because SDDC designated him as its official representative on PowerTrack. (P1. Fact No. 9). His advice given in this capacity, without any objection from other SDDC officials, and which was published on the SDDC Web site, was the only stated SDDC position on reimbursement of the PowerTrack fee after Families First Phase II had been postponed and at the time of the IW05 and DW05 rate filings. It was not until three months after the filing of the IW05 final rates and two months after the filing of the DW05 final rates that SDDC, in its e-mail message, dated October 31, 2005, for the first time, stated that it would not reimburse TSPs for the

PowerTrack fee and that TSPs should have included the PowerTrack fee in their rates filed in DW and IW05. (Pl. Fact No. 25).

SDDC's current position that TSPs were to include the PowerTrack fee in their IW/DW05 rates is in direct conflict with George Thomas's consistent prior advice that TSPs were *not* to include the PowerTrack fee in their rates until Phase II of Families First (Pl. Fact Nos. 12, 13), which was also posted on the SDDC Web site. (Pl. Fact No. 16).

The unfairness of SDDC's retroactive refusal to reimburse TSPs is summed up in The Day Companies' XRS newsletter for the fourth quarter 2005 sent to its many TSP clients, which stated:

> "When Phase II was delayed, and rate filing for the IW/DW05 was ongoing, we contacted SDDC and asked them for clarification on whether or not the reimbursement of the PowerTrack fee would continue. We were told definitively, and in writing, that the reimbursement would continue until Phase II of Families First started. We passed that information to our clients, who filed rates accordingly. Now SDDC has reversed its decision, when it is too late for TSPs to take the PowerTrack fee into consideration for the IW/DW05 rates." (Pl. Fact No. 26).

The above facts clearly show SDDC consistently and repeatedly advised industry that it would reimburse the PowerTrack fee during IW05 and DW05 and did not change this position until months after the rates were filed and the IW05 and DW05 procurements had commenced. This deprived plaintiffs of the compensation they were promised for the mandatory billings by PowerTrack.

The TSPs' right to compensation for billing by PowerTrack is founded on their contract with SDDC. From the inception, SDDC has recognized that PowerTrack is an additional service which imposes an added cost on TSPs, i.e. the U.S. Bank fee, for which they are entitled to compensation. SDDC consistently reimbursed this fee until its notice of October 31, 2005 which stated that TSPs were to be compensated for billing by PowerTrack for IW05 and DW05 by including the fee in their rates. SDDC again acknowledged that TSPs were to be compensated during the current IS/DS06 cycles by including the PowerTrack fee in their rates.

We submit that a binding contract, either express or implied-in-fact, was formed by SDDC's imposition of the PowerTrack billing requirement, the TSPs' compliance with that requirement and SDDC's agreement that TSPs are entitled to compensation for billing by PowerTrack. These facts evidence a mutual intent that TSPs are to be paid for the additional cost of billing by PowerTrack. SDDC's requirement to bill by PowerTrack is the offer, the TSPs billing by PowerTrack is the acceptance and SDDC's commitment to pay TSPs the additional costs of the PowerTrack billing is the consideration. See Trauma Serv. Group v. United States, 104 F.3d 1321, 1326 (Fed. Cir. 1997). (Stating that requirements for a contract with the government are the mutual intent to contract, including an offer, acceptance and consideration).

The issue before the Court under the contract is how plaintiffs are to be compensated for billing by PowerTrack. Even the conflicting positions advanced by SDDC recognize that the TSPs are to be compensated by SDDC for billing by PowerTrack, the sole issue being how.

We maintain that plaintiffs are entitled to reimbursement based on George Thomas's advice because, as SDDC's designated representative on PowerTrack, an integral part of his duties was to advise TSPs on matters relating to PowerTrack and his advice that the PowerTrack fee would continue to be reimbursed until Phase II of Families First should be binding on defendant. As the Federal Circuit stated in H. Landau & Company v. United States, 886 F.2d 322, 324 (Fed. Cir. 1989):

> " 'Authority to bind the [g]overnment is generally implied when such authority is considered to be an integral part of the duties assigned to a [g]overnment employee.' J. Cibinic & R. Nash, *Formation of Government Contracts* 43 (1982); see also United States v. Bissett-Berman Corp., 481 F.2d 764, 768-69 (9th Cir. 1973) (holding that the government's attorney had the implicit authority to bind the government although the CO had the expressed authority)."

In the Landau case, the Federal Circuit found that two government officials, who were not contracting officers,[3] but who had responsibility to administer a subcontract, had implied actual authority to bind the government to make payments in order to ensure performance of the subcontract. Similarly, in

[3] Although this is a non-FAR procurement and as a result no one is specifically designated as a contracting officer, George Thomas held his position by designation from Col. Amato and his predecessor Col. Keller who have contracting authority.

United States v. Bissett-Berman Corp. 481 F.2d 764, 768-769 (9th Cir. 1973), the Court held that an attorney for the government had implied actual authority to bind the government by executing a stipulation of settlement even though he was not a contracting officer.

As in the cited cases, Mr. Thomas was authorized by SDDC to act on matters relating to PowerTrack. His advice to TSPs that the PowerTrack fee would be reimbursed was a proper exercise of his authority and was relied on by the TSPs as the reason for not increasing their rates as the means of being compensated for payment of the PowerTrack fee. The case law holds that advices of government officials, who are not contracting officers but, like George Thomas, are specifically authorized to construe contract requirements, which advice is relied on by contractors, is binding on the government. See Sipco Services & Marine, Inc. v. United States, 41 Fed. Cl. 196, 221-222 (1998); Max Drill, Inc. v. United States, 427 F.2d 1233 (Ct. Cl. 1970); Fox Valley Engineering v. United States, 151 Ct. Cl. 228, 239-248 (1960).

The Sipco case involved a claim by a contractor for recovery of costs incurred in complying with directions of the contracting officer's representative concerning specifications for removal of lead-based paint and recoating the exterior surface of a wind tunnel. The Court found that the contract specifications did not permit the contractor to accomplish this in inaccessible areas. However, the representative of the contracting officer directed that the required additional

work be performed. The government contended that the representative had no authority to order the work not covered by the specifications. The Court rejected this position stating:

> "However, even if Kono had no actual authority to bind the government, the facts show he had implied authority. '[A] representative of the contracting officer can be found to have implied authority to make a change in the absence of the contracting officer, if the change is within, or reasonably related and consequent to the representative's official responsibilities....' " (41 Fed. Ct. at 222) (Citation omitted).

The Sipco case stands for the proposition that a contractor can rely on a statement of a duly authorized government representative even when his direction is at variance with the terms of the contract. In the case at bar, there is no variance with the terms of the contract. The contractors (TSPs) relied on the direction that the government's duly authorized representative consistently gave them after Families First Phase II had been postponed, namely, do not put the PowerTrack fee in your rates until Phase II becomes effective because, until that time, we will continue to reimburse you for that expense.

In Max Drill, Inc. v. United States, 427 F.2d 1233 (Ct. Cl. 1970), the issue was whether a solicitation required a contractor to paint certain window sashes in performance of the contract. Prior to bid, the contracting officer's technical representative confirmed the contractor's interpretation that the solicitation did not require painting of the window sashes in question. Subsequently, the contracting officer overruled the designated official and interpreted the contract as requiring

the subject painting. The issue before the Court of Claims was whether the contracting officer's conflicting interpretation was a change in the contract requirements for which the contractor was entitled to compensation. The Court held the interpretation of the representative to be binding on the government and accordingly held that the subsequent contrary interpretation of the contracting officer constituted a contract change for which the contractor was entitled to compensation. In other words, the Court found that the contractor could properly rely on the representative's interpretation of the contract although it was in conflict with the subsequent interpretation of the contracting officer. The Court set forth the general principle as follows:

> "When an official of the contracting agency is not the contracting officer, but has been sent by the contracting officer for the express purpose of giving guidance in connection with the contract, the contractor is justified in relying on his representations. Fox Valley Eng'r., Inc. v. United States, 151 Ct. Cl. 228, 240 (1960)." (427 F.2d at 1243) (Footnote omitted).

In Fox Valley Engineering, Inc. v. United States, 151 Ct. Cl. 228, 239-240 (1960), the Court of Claims upheld the award of compensation to a contractor who relied on the advice of an inspector designated by the contracting officer to provide guidance and direction concerning the contract. The Court held that the acceptance of the work by the inspector warranted a finding that the contractor had complied with the contract specifications. The Court stated:

> "This official may have sometimes have been referred to as an 'inspector', but at least for the purpose of this contract he was vested by the contracting officer with powers which went beyond those

> ordinarily associated with an 'inspector'. He was sent to plaintiff's plant by the contracting officer for the express purpose of giving guidance and any necessary instructions and directions. The incongruity of saying that this official could not accept work in the field, but could reject it immediately upon returning to the home office, is obvious. In any event, even if he had no power to accept work in the field, it is undisputed that he was fully qualified technically, was wholly familiar with the contract requirements, and was selected to be sent to plaintiff's plant as the AMS representative who could give the necessary guidance and directions...."
> (151 Ct. Cl. at 240).

As in the case of the contracting officer's representatives in the above-cited cases, George Thomas's advice should be held binding on defendant. George Thomas was expressly designated by SDDC to advise TSPs on billing by PowerTrack. Mr. Thomas briefed TSPs on PowerTrack matters during meetings with industry and in conference calls; he specifically advised TSP representatives orally and in writing that reimbursement of the PowerTrack fee would continue until Phase II of Families First became effective; and he had a notice posted on the SDDC Web site confirming his advices to TSPs that reimbursement of the PowerTrack fee was to continue until Phase II of Families First. TSPs relied on Mr. Thomas's advice in establishing their DW/IW05 rates. Mr. Thomas's advice to TSPs was not contradicted by SDDC until two months after plaintiffs had filed their rates in DW05 and three months after the rate filing in IW05.

We further maintain that SDDC's refusal to reimburse TSPs for the PowerTrack fee, as stated in its October 31, 2005 e-mail repudiated the prior consistent interpretation upon which they relied, namely that they would be

reimbursed for the PowerTrack fee paid on shipments serviced during IW05 and DW05. This subsequent conflicting interpretation is equivalent to an attempted unilateral amendment of SDDC's contractual obligation owed TSPs, including plaintiffs, which cannot be sustained. The law is clear that one party to a contract cannot unilaterally amend its terms. See Channelle v. Citicorp Nat. Services, Inc., 89 F.3d 379, 384 (7th Cir. 1986); See generally 17A AmJur 2d, Contracts, §507, n.12 and cases cited.

Further, SDDC's latest interpretation that TSPs' rates should include the PowerTrack fee is unreasonable since it would result in TSPs' being paid the PowerTrack fee when in fact they did not perform the service, viz. did not bill shipments by PowerTrack. As shown by the record, the Air Force still does not participate in PowerTrack and at the time of the IW/DW05 rate filings, 28 military bases of the Army, Navy, and Marine Corps. were not participating in PowerTrack. (P1. Fact No. 19). Further, billing by PowerTrack may be accomplished only when both the origin and destination military installations participate in PowerTrack and rates cannot be varied by virtue of the military service involved. (P1. Fact No. 19). As reflected in Colonel Keller's letter to Joseph Harrison, President of AMSA, dated January 24, 2005, inclusion of the PowerTrack fee in the filed rates, without all military bases participating, would not be "cost effective" for the government (P1 Fact No. 18) and, in our opinion, would constitute a windfall for TSPs not legally or ethically warranted.

Moreover, the rate cap which SDDC imposed in the DW05 solicitation prevented TSPs from increasing their rates to include the PowerTrack fee, while both the DW05 and IW05 solicitations provided fixed charges for accessorial services which TSPs could not increase. (P1. Fact Nos. 6, 7).

For the above reasons, we submit that George Thomas's consistent advice to TSPs that they would be reimbursed and not to include the PowerTrack fee in their rates, given as SDDC's designated representative on PowerTrack matters and posted on the SDDC Web site, is binding on defendant.

## III. PLAINTIFFS ARE ENTITLED TO QUANTUM MERUIT COMPENSATION FOR BILLING BY POWERTRACK AS AN ADDITIONAL SERVICE NOT REQUIRED BY THE SOLICITATION AT THE TIME OF RATE SUBMISSION.

We maintain that plaintiffs are entitled to recover in quantum meruit for billing by PowerTrack. The IW05 and DW05 solicitations, in response to which the rates were filed, provided only for billing to military finance centers and did not require billing to U.S. Bank by PowerTrack. The requirement that TSPs bill by PowerTrack was not added to the IW05 solicitation until it was amended on October 3, 2005, retroactive to October 1, three months after plaintiffs' final rates were filed for IW05 and three days after IW05 commenced. (P1. Fact No. 22). The DW05 solicitation was amended to require billing by PowerTrack by Change 3, which is shown by SDDC as having been created on November 30, 2005, three months after the rates were filed. (P1. Fact No. 23).

Plaintiffs contend that they are entitled to quantum meruit compensation for billing by PowerTrack because the IW/DW05 solicitations, at the time of rate submission, did not provide for billing by PowerTrack as a service to be provided under the transportation rates filed by the TSPs and no compensation was provided for the provision of this service.

We maintain that as a matter of government contract law, the rates filed by plaintiffs compensate them only for the services required by the terms of the solicitation on which they bid. Since billing by PowerTrack was not required by either of the solicitations as issued, that method of billing constitutes the performance of an additional service and the government is obligated to compensate plaintiffs for costs which they incurred in order to comply with that extra-solicitation requirement.

In government contracting, it is fundamental that the solicitation is the government's request for prospective contractors, here TSPs, to submit offers, including prices, to provide the services specifically set forth in the solicitation. The acceptance of the bid prices, i.e. rates, by the government obligates the TSP to provide the solicitation services but does not require the TSP to provide services not set forth in the solicitation free of charge.

The fact is that SDDC imposed the PowerTrack requirement for its own benefit to obtain the anticipated technological benefits of the PowerTrack automated billing and payment system to replace the systems used by the military

finance offices. Achievement of these anticipated benefits to the government caused substantial additional expense to TSPs who incurred costs in training personnel and other additional costs involved in the PowerTrack system which TSPs have found to be more expensive. In the PowerTrack system, TSPs had to submit invoices in a less efficient and more costly way then when billing the military finance offices, which costs are in addition to the 1 percent fee, (now increased to 1.1 percent), which each plaintiff TSP is required to pay U.S. Bank. The Day Companies has submitted over 76,000 billings by PowerTrack on behalf 369 TSPs and has had to increase its charges to its TSP customers for billing by PowerTrack by 38 percent for domestic shipments and 47 percent for international shipments. (Pl. Fact No. 21).

We maintain that plaintiffs are entitled to compensation in quantum meruit for the additional costs incurred as the direct result of the mandatory billing by PowerTrack. The case law supports the award of quantum meruit compensation to plaintiff TSPs for providing the additional service of billing by PowerTrack for SDDC's benefit, which requirement was not made a part of the solicitations until after acceptance of the rates filed in DW05 and IW05. See: Trans Ocean Van Service v. United States, 426 F.2d 329, 348 (Ct. Cl. 1970); Allstates Van Lines Corp. v. United States, 215 Ct. Cl. 1075 (1978); American Ensign Van Service v. United States, 220 Ct. Cl. 681 (1979).

In the Trans Ocean case, the Court of Claims, in connection with a solicitation for household goods rates and services, administered by the predecessor of SDDC, MTMC, awarded compensation to the plaintiff for additional mileage incurred when the government directed the plaintiff, after its rates had been filed, to route a shipment from Georgia to Germany through the port of New Orleans rather than the port of Jacksonville, which was the port normally used. The Court stated:

> "The performance by the plaintiff at the defendant's request of this additional land transportation created an implied obligation on the part of defendant to reimburse the plaintiff for the reasonable value of the extra service...." (192 Ct. Cl. at 111, 426 F.2d at 348).

The Trans Ocean decision was followed in the Allstates and American Ensign decisions in which the Court awarded quantum meruit compensation for the performances of services not contained in the solicitation.

We maintain the SDDC's requirement that TSPs bill by PowerTrack is similarly an additional service, not contained in either solicitation at the time of bid. Like the additional transportation involved in the Trans-Ocean, Allstates and American Ensign decisions, billing by PowerTrack is a requirement imposed after the rates had been filed causing TSPs to incur additional expense and is not a service which TSPs agreed to provide for free.[4] Under the rationale of the Court in the Trans Ocean, Allstates and American Ensign decisions, SDDC's demand

---

[4] An indication of this additional cost is shown in the Day Declaration (P1. Fact No. 21). Additional evidentiary support will be submitted during the damage phase of this case, absent settlement of this claim.

that plaintiffs perform the additional service of billing by PowerTrack "created an implied obligation" of the agency to compensate plaintiffs for costs incurred in complying with SDDC's demand.

## CONCLUSION

For the above reasons, plaintiffs maintain that SDDC is contractually obligated to reimburse them for the PowerTrack fees paid during IW05 and DW05 and for the additional costs they incurred in billing by PowerTrack and respectfully request that the Court grant summary judgment on the issue of liability in their favor.

Respectfully submitted,

s/Alan F. Wohlstetter
DENNING & WOHLSTETTER
815 Connecticut Avenue, N.W.
Suite 500
Washington, D.C. 20006
Tel: (202) 833-8884
Fax: (202) 833-8886
Email: awohlstetter@aol.com
Attorney for Plaintiffs
Stevens Van Lines, Inc. et al.

STANLEY I. GOLDMAN
DENNING & WOHLSTETTER
Of Counsel

Dated: May 12, 2006

CERTIFICATE OF SERVICE

I certify under penalty of perjury that on this 12th day of May 2006, I caused to be served by hand delivery, PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, addressed as follows:

Brian S. Smith,
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Room 4054
1100 L Street, NW
Washington, DC 20530

s/Stanley I. Goldman
Stanley I. Goldman