IN THE UNITED STATES COURT OF FEDERAL CLAIMS

STEVENS VAN LINES, INC., ET AL.,

Plaintiffs

v.

THE UNITED STATES,

Defendant

No. 05-1278C
(Judge Smith)

# APPENDIX IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

ALAN F. WOHLSTETTER
DENNING & WOHLSTETTER
815 Connecticut Avenue, N.W.
Suite 500
Washington, D.C. 20006
Tel: (202) 833-8884
Fax: (202) 833-8886
Attorneys for Plaintiffs

STANLEY I. GOLDMAN
DENNING & WOHLSTETTER
Of Counsel

May 12, 2006

# INDEX TO PLAINTIFFS' APPENDIX


| | Page |
|---|---|
| Declaration of Terry R. Head, President, Household Goods Forwarders Association of America, Inc. (HHGFAA) | 1 |
| Attachments: | |
| 1A. Original Item 426a – Solicitation I-16 (IW05), Billing | 5 |
| 1B. Revised Item 426a – Solicitation I-16 (IW05), Billing | 6 |
| 2. SDDC Message, October 31, 2005 | 7 |
| 3. Letter from T. Head to Col. Steven L. Amato, SDDC, November 2, 2005. | 8 |
| 4. Letter from T. Head to Col. Steven L. Amato, SDDC, November 4, 2005. | 11 |
| 5. E-mail from T. Hicks, SDDC to T. Head, and e-mail from T. Head to SDDC, November 9, 2005. | 13 |
| 6. E-mail from Col. Steven L. Amato, SDDC to T. Head, November 10, 2005 | 14 |
| Declaration of Joseph M. Harrison, President, American Moving & Storage Association (AMSA) | 15 |
| Attachment: | |
| 1. Letter from Col. Thomas Keller, SDDC, to J. Harrison, January 24, 2005. | 20 |
| Declaration of Scott Michael, Vice President, Government Traffic (AMSA) | 22 |
| Attachments: | |
| 1. E-mail from S. Michael to S. Savage, IBM, June 7, 2005. E-mail from S. Savage to S. Michael, June 8, 2005. | 29 |
| 2. Email from S. Michael to G. Thomas, SDDC, August 9, 2005. | 30 |
| 3. E-mail from G. Thomas to S. Michael, August 10, 2005. | 31 |
| 4. Solicitation D-10 (DW05), Item 430, Items Excluded from Rate Percentage Application. | 32 |
| 5. Solicitation D-10 (DW05), Billing Procedures/Instructions, October 1, 2005. | 34 |

| | Page |
|---|---|
| Declaration of Randall K. Groger, President, Air Land Forwarders, Inc. | 35 |
| Attachments: | |
| 1. Military Bases in Addition to Air Force Bases, Not Available for Billing by PowerTrack at Time of IW05. | 38 |
| Declaration of Margaret (Peggy) Wilken, Vice President, Stevens Van Lines, Inc. | 39 |
| Attachments: | |
| 1. E-mail from Peggy Wilken re Phase I Families First – PowerTrack/CWA, August 26, 2005. | 44 |
| 2. Solicitation D-10 (DW05), Change 3, November 30, 2005 | 47 |
| 3. Military Bases Not Listed as PowerTrack-Certified. | 49 |
| 4. Solicitation D-10 (DW05), Item 430, Items excluded from Rate Percentage Application. | 50 |
| Declaration of Charles L. White, Director of Government & Military Relations, HHGFAA | 52 |
| Attachments: | |
| 1. E-mail from C. White to G. Thomas, SDDC, June 30, 2005. | 56 |
| 2. E-mail from G. Thomas to C. White, June 30, 2005. | 57 |
| 3. E-mail from G. Thomas to S. Michael, August 10, 2005. | 58 |
| 4. E-mail from C. White to G. Thomas, August 12, 2005. E-mail from G. Thomas to C. White, August 12, 2005. | 59 |
| 5. SDDC Families First Phase I FAQ – Web site Posting – August 2005. | 60 |
| Declaration of Brandon Day, Chief Executive Officer, The Day Companies, Inc. | 61 |
| Attachments: | |
| 1. E-mail from S. Fuchtman, The Day Companies, to G. Thomas, SDDC, July 29, 2005. E-mail from G. Thomas to S. Fuchtman, July 29, 2005. | 66 |
| 2. XRS News, 1% PowerTrack Fee, July 29, 2005. | 67 |
| 3. SDDC Families First Phase I FAQ, August 2005. | 68 |
| 4. XRS Newsletter, 4th Quarter 2005, "Changes in Store for PowerTrack Fee. | 69 |
| Federal Register Notice, 70 F.R. 5616-5617, February 3, 2005. | 70 |

DECLARATION OF TERRY R. HEAD

My name is Terry R. Head. I am President of the Household Goods Forwarders Association of America, Inc. (HHGFFA) of Alexandria, Virginia. The HHGFAA is a non-profit association of the household goods freight forwarder industry. The HHGFAA has a total membership worldwide of 1930 members of which 99 are freight forwarders of household goods who participate as Transportation Service Providers (TSPs) in the International Personal Property Program administered by the Surface Deployment and Distribution Command (SDDC). Many of these household goods freight forwarders also participate in SDDC's domestic personal property program.

A principal function of the HHGFAA is to represent its members in matters relating to the personal property procurements of SDDC. In the international procurement, SDDC twice yearly solicits participating TSPs to submit rates for six-month procurement periods. The current international procurement is IW05, covering the six-month period October 1, 2005 through March 31, 2006. In the IW05 procurement, the solicitation provided for two rate filing periods, viz. the initial filing period in which TSPs file rates which may be decreased but not increased during the second or me-too, cycle in which TSPs establish the rates at which they are awarded shipments during the IW05 rate cycle. For IW05, the initial

rate filing period ended on May 18, 2005 and the me-too rate filing ended on July 28, 2005.

The IW05 solicitation when issued did not provide that TSPs bill by PowerTrack. Item 426a of the IW05 solicitation is attached as No. 1. On October 3, 2005, SDDC amended the IW05 solicitation retroactive to October 1, 2005, to require TSPs to bill by PowerTrack.

As President of HHGFAA, I regularly represent the interests of our members in matters relating to the SDDC personal property procurements in which capacity I have been involved with SDDC's transition to a new procurement, known as Families First, which has been in development for several years. Families First involves a conversion of the SDDC procurement to a best value system from the current procurement which is cost-based. Another principal element of Families First is the use of an electronic billing and payment system, PowerTrack, which is a proprietary service of US Bank, an SDDC contractor. The PowerTrack system is a new computerized system to which both the TSPs and the military services have had to adapt. PowerTrack was initially a voluntary option which began in March 29, 2004, and is referred to as Phase I of Families First. However, by Federal Register Notice, dated February 3, 2005, SDDC announced that participation in PowerTrack would become mandatory on April 15, 2005.

From the inception of Phase I, SDDC reimbursed TSPs for the fee which was charged by US Bank as its compensation for the use of the PowerTrack system.

On January 5, 2005, I participated in a meeting with SDDC at which Families First and PowerTrack were principal topics. Mr. Tom Hicks and Mr. George Thomas of SDDC advised at that meeting that reimbursement of the PowerTrack fee would continue until Phase II which would be when the Families First program was put into effect in its entirety. During the ensuing months, either I or Charles White, the HHGFAA's Director of Government & Military Relations, participated in other meetings, conference calls and discussions with SDDC officials. At no time were we advised that SDDC had changed its position and I understood that the PowerTrack fee would continue to be reimbursed until Phase II became effective. After June 22, 2005, when Phase II was postponed from October 1, 2005 until February 1, 2006, HHGFAA began receiving inquiries from its membership as to whether the PowerTrack fee would continue to be reimbursed. On June 30, 2005, Mr. White emailed George Thomas, who was designated by SDDC as its representative on PowerTrack, and asked confirmation that the PowerTrack fee would continue to be reimbursed. Mr. Thomas's response was that the PowerTrack fee would be reimbursed until Families First Phase II became effective. Mr. White will provide the details of his interaction with SDDC on this issue in his declaration.

The first indication that I received that SDDC had changed its position and decided not to reimburse TSPs for the PowerTrack fee during IW05 was by a comment of Dennis Williams of SDDC made during a conference call on October 19, 2005 which primarily focused on issues arising from hurricane Katrina.

Mr. White then attended a meeting on October 20, 2005 at which SDDC advised that the one percent PowerTrack fee would no longer be reimbursed. SDDC's first and only written notification to industry that it would not reimburse the PowerTrack fee during IW05 and DW05 was an email, dated, October 31, 2005. I attach this notice to my statement. (No. 2). After receipt of this notice, I wrote to Colonel Steven L. Amato, Deputy of Chief of Staff for Passenger & Personal Property of SDDC on November 2, 2005 and again on November 4, 2005, setting forth my TSP members' objections to the reversal of SDDC's earlier position. (Nos. 3 and 4). On November 9, 2005, I received an email from Mr. Tom Hicks of SDDC and on November 10, 2005, I received an email for Colonel Amato affirming Mr. Hicks' statement that the PowerTrack fee would not be reimbursed. (Nos. 5 and 6).

I hereby declare under penalty of perjury that the foregoing is true and correct.

Terry R. Head

Dated this 27th day of April 2006 at Alexandria, Virginia.

c. Transportation charges to cover the movement of shipment, or part thereof, from point where it was originally tendered to warehouse location will be computed on basis of weight of shipment or that part of shipment stored in warehouse. Any subsequent movement from warehouse will constitute a new shipment.

Item 423 ***Removal or Placement of Property from or to Inaccessible Locations***

The owner is responsible for removal or placement of property from or to attics, basements, and other locations, and to make property available to the Transportation Service Provider where the location of property and goods to be shipped or delivered (1) is not accessible by a permanent stairway (does not include ladders of any type), (2) is not adequately lighted, (3) does not have a flat continuous floor, and (4) does not allow a person to stand erect. When the PPSO requests and approves the removal or placement of property from or to such areas not readily accessible, labor charges are authorized.

Item 424 ***Extra Pickup or Delivery***

Portions of a shipment may be picked up or delivered at one or more places of origin, destination, or en route.

Item 425 ***Pickup or Delivery at Commercial Warehouse***

Except as otherwise provided herein, if a shipment is delivered to or picked up at a commercial warehouse, the rates for transportation include only the unloading or loading at the door, platform, or other point convenient or accessible to the vehicle. Exception: See Items 432.b.(5) and 534. However, if a Transportation Service Provider is requested by the PPSO to enter the facility to perform origin or destination services, labor charges apply.

Item 426 ***Billing Procedures***

a. For services rendered, the Transportation Service Provider agrees to bill the appropriate military service finance office responsible for payment of the transportation charges in accordance with procedures disseminated by the Commander, SDDC. For shipments that are diverted or reconsigned in accordance with applicable rate tariff/tender, the Transportation Service Provider the original Diversion Certificate, signed by the requesting PPSO authenticating the diversion or reconsignment. Valuation charge will be identified separately from all other charges in CWA. All billing must be supported by appropriate documents.

b. The U.S. Government shall pay the Transportation Service Provider applicable rates and charges due for transportation services rendered 30 days after receipt of Transportation Service Provider's proper transportation bill (invoice).

c. Late Payments and Interest Penalties

(1) An interest penalty will be paid to the Transportation Service Provider for the period commencing on the day after the required payment date, as specified in paragraph (a), and ending on the date on which payment of the applicable transportation charges are made.

(2) The interest penalty payment will be computed based on the percentage interest rate determined by the Secretary of the Treasury for interest payments under Section 12 of the Contract Disputes Act of 1978 (41 USC 611), which is in effect at the time the obligation accrues to pay a late payment interest penalty.

Att. 1B



c. Upon request of the PPSO, the Transportation Service Provider will use or engage smaller equipment than its normal road haul equipment or provide extra labor for the purpose of transferring the shipment between the origin or destination address and the nearest point of approach by the Transportation Service Provider's road equipment. Charges for the auxiliary service to cover labor and additional vehicle (if used) will be as provided in Chapter V and will be in addition to all other transportation or accessorial charges.

d. If the owner does not accept the shipment at nearest point of safe approach by Transportation Service Provider's road equipment to the destination address, the Transportation Service Provider may place the shipment, or any part thereof not reasonable possible for delivery, in storage at the nearest available DOD-approved warehouse. The responsible PPSO must be informed of such action prior to placement in warehouse. The liability on the part of the Transportation Service Provider will cease when the shipment is unloaded into the warehouse and the shipment will be considered as having been delivered.

e. Transportation charges to cover the movement of shipment, or part thereof, from point where it was originally tendered to warehouse location will be computed on basis of weight of shipment or that part of shipment stored in warehouse. Any subsequent movement from warehouse will constitute a new shipment.

Item 423 ***Removal or Placement of Property from or to Inaccessible Locations***

The owner is responsible for removal or placement of property from or to attics, basements, and other locations, and to make property available to the Transportation Service Provider where the location of property and goods to be shipped or delivered (1) is not accessible by a permanent stairway (does not include ladders of any type), (2) is not adequately lighted, (3) does not have a flat continuous floor, and (4) does not allow a person to stand erect. When the PPSO requests and approves the removal or placement of property from or to such areas not readily accessible, labor charges are authorized.

Item 424 ***Extra Pickup or Delivery***

Portions of a shipment may be picked up or delivered at one or more places of origin, destination, or en route.

Item 425 ***Pickup or Delivery at Commercial Warehouse***

Except as otherwise provided herein, if a shipment is delivered to or picked up at a commercial warehouse, the rates for transportation include only the unloading or loading at the door, platform, or other point convenient or accessible to the vehicle. Exception: See Items 432.b.(5) and 534. However, if a Transportation Service Provider is requested by the PPSO to enter the facility to perform origin or destination services, labor charges apply.

Item 426 ***Billing Procedures***

a. For services rendered, the Transportation Service Provider agrees to submit invoices to US Bank Powertrack for payment. For those shipments that are not booked through the Central Web Application (CWA) i.e., US Air Force Shipments, NTS, DPM and ITT, the TSP will bill the appropriate military service finance office responsible for payment bill the appropriate military service finance office responsible for payment of the transportation charges in accordance with procedures disseminated by the Commander, SDDC. For shipments that are diverted or reconsigned in accordance with applicable rate tariff/tender, the Transportation Service Provider the original Diversion Certificate, signed by the requesting PPSO authenticating the diversion or reconsignment. Valuation charge will be identified separately from all other charges in CWA. All billing must be supported by appropriate documents.

-----Original Message-----
From: ppqual@sddc.army.mil [mailto:ppqual@sddc.army.mil]
Sent: Monday, October 31, 2005 9:11 AM
To: SalesInfo
Cc: ppqual@sddc.army.mil
Subject: PowerTrack Surcharge Notification

Att. No. 2

1. This notice is to remind all TSPs that, effective with the International Winter 05 (IW05) and Domestic Winter 05 (DW05) rate cycles, the 1% PowerTrack Surcharge fee is no longer reimbursable. Reference is made to Federal Register Notice/Vol. 70, No. 22/Thursday, February 3, 2005/Mandatory Use of US Bank?s Power Track System by Department of Defense Personal Property Transportation Service Providers (TSPs)

2. TSPs were provided notification on February 3, 2005 to incorporate this surcharge into their May-July 2005 rate filings for IW/DW05. Therefore, effective October 1, 2005 (IW05) and November 1, 2005 (DW05), the 1% PowerTrack Surcharge fee is no longer being reimbursed.

Att. No. 3
page 1 of 3

HOUSEHOLD GOODS FORWARDERS ASSOCIATION OF AMERICA, INC.

hhgfaa
Household Goods Forwarders Association of America, Inc.

5904 RICHMOND HIGHWAY, SUITE 404 • ALEXANDRIA, VIRGINIA 22303
TELEPHONE (703) 317-9950 • FAX (703) 317-9960
E-Mail: info@hhgfaa.org • Website: http://www.hhgfaa.org

TERRY R. HEAD
President
Alexandria, Virginia

GEORGIA ANGELL
Chairperson
Monroe, Washington

RANDALL R. GROGER
Vice Chairman
Jacksonville, Florida

MICHAEL COBB
Executive Committee
Member at Large
Seattle, Washington

JAN MOORE
Executive Committee
Member at Large
Long Beach, California

MICHAEL RICHARDSON
Executive Committee
Member at Large
Orange Park, Florida

MARIO S. RIZZO
Executive Committee
Member at Large
Seattle, Washington

JACQUELINE M. AGNEW
Associate Members'
Representative
Sumner, Washington

DOUGLAS W. FINKE
Associate Members'
Representative at Large
Louisville, Kentucky

MICHAEL D. GILBERT
YP-35 Representative
Vista, California

ALAN F. WOHLSTETTER
General Counsel
Washington, D.C.

November 2, 2005
( via e-mail)

Colonel Steven L. Amato,

Deputy Chief of Staff
for Passenger and Personal Property
Headquarters - Surface Deployment
and Distribution Command
Department of the Army
Hoffman Building II
200 Stovall Street
Alexandria, VA 22332-5000

Dear Colonel Amato:

Re: Elimination of the Pass-through for the PowerTrack Fee

The SDDC Notice of last Friday advising that the one percent reimbursement for the mandated use of PowerTrack would be eliminated prior the use of DPS, i.e. Phase II of PowerTrack, has been an unpleasant surprise to our membership who have been consistently advised by your staff that this reimbursement will continue until Phase II of PowerTrack is in effect. The statements made to industry clearly advising that the PowerTrack reimbursement would continue until that time were clearly chronicled by Scott Michael in his opposition to SDDC's change of position which he submitted on behalf of AMSA. SDDC's authorization of the one percent PowerTrack reimbursement fee plus SDDC's direction to TSPs to include in their SFRs the additional cost of using PowerTrack, rather than the military finance offices, constitutes a recognition by SDDC that this service was not included in the SFRs.

We will not duplicate Scott Michael's recitation of the facts but want to make clear that we support the AMSA position and on behalf of HHGFAA, would like to set forth for your consideration several matters which I hope will persuade you to reconsider this decision.

1. TSPs' bids are governed by the solicitation issued by SDDC and the Defense Transportation Regulations (DTR) which are incorporated in the solicitation. The solicitation contains no provision mandating the use of PowerTrack. Further, Item 432 of the solicitation clearly sets forth the services that are to be performed by a TSP under its single-factor rates (SFRs). The list of services which a TSP is to perform as a part of its SFRs contained in the solicitation is quite extensive and covers ten paragraphs with numerous subparagraphs. In no part of the solicitation or in the DTR is there any requirement that TSPs perform PowerTrack billings under its SFRs. Initially, SDDC recognized that fact and specifically provided for additional compensation to the TSPs in the form of the one percent PowerTrack reimbursement fee in consideration for the TSPs' mandated use of PowerTrack, rather billing through the military finance agencies. However, the SDDC message now advises us that the requirement to use PowerTrack, not contained in the solicitation, is to continue but the one percent reimbursement for providing this service will cease effective October 1, 2005.

The elimination of the fixed one percent reimbursement fee but the mandated continued performance of a service not within the scope of the SFRs, as defined in the solicitation, does not eliminate the TSP's right to compensation for the performance of this additional service. Its sole effect is to have the payment amount determined on a quantum meruit basis viz., the cost of providing the service. From what I hear from the HHGFAA membership, the one percent reimbursement fee does not fully compensate TSPs for the total expenses they are incurring in the use of PowerTrack and the amount due them, if determined on a quantum meruit basis, may well exceed the one percent which TSPs have accepted to date.

2. Item 306 of the solicitation requires that compensatory rates be filed by TSPs. The elimination of the one percent reimbursement for the mandated use of PowerTrack will result in some TSPs' SFRs being forced below compensatory levels.

3. I understand that SDDC takes the position that its Federal Register Notice of February 3, 2005 permits it to continue the PowerTrack requirement without reimbursement to TSPs. We respectfully disagree for the following reasons.

First, as set forth above, what a TSP is to provide under its SFRs is set forth in the solicitation. Clearly the solicitation does not require the performance of additional services without compensation. Although you rely upon the Federal Register Notice, we know of no basis for the contention that the terms of a solicitation can be changed by a notice in the Federal Register. Our members advise me that when they submit rates they look at the terms of the solicitation and do not consider any other documents.

Second, the Federal Register Notice is ambiguous. It provides:

*"The participating TSPs will continue to receive the 1% PowerTrack Surcharge reimbursement fee until International Winter 05 (IW05) and Domestic Winter 05 (DW05)* *or* *Defense Future Personal Property (DPS) [Families First, Phase II] Rates are in effect."* (Emphasis supplied).

Initially, the rates covering the current CRP and Families First were both to be effective October 1, 2005 and therefore there was no need to interpret this provision to determine whether the reimbursement fee was to continue until Families First Phase II, one of the possibilities specifically provided for in the Federal Register Notice. However, Families First, Phase II was subsequently extended to February 1, 2006 and then indefinitely postponed. When the postponement of February 1, 2006 took place, industry inquired of the SDDC staff as to when the one percent reimbursement fee would cease and were advised, on several occasions, in the strongest of terms, that the fee would continue until Families First, Phase II became effective. In other words, the SDDC staff read the Federal Register Notice as industry did, namely, that the PowerTrack reimbursement fee would continue until the latter of the two events mentioned in the Federal Register Notice had occurred, namely the advent of Families First, Phase II.

The advice from the SDDC staff was furnished TSPs during the rate filing process in IW05. TSPs were therefore induced not to reflect the one percent PowerTrack cost in their SFRs. I believe it is most unfair that TSPs who relied on the SDDC advice and filed competitive SFRs, without increasing them for their additional costs of using PowerTrack, would be subjected to a loss of revenue because SDDC has now changed its mind.

We respectfully submit that if SDDC had intended to mandate the required use of PowerTrack without reimbursement, it should have amended its solicitations to accomplish that and not now profess to have done that by a publication in the Federal Register which representatives of SDDC unreservedly advised did not terminate the one percent reimbursement fee for the mandated use of PowerTrack.

We are hopeful that this matter can be resolved under our partnership by applying a standard of fairness and that we can avoid litigation which we only consider as a last resort.

Sincerely,

HOUSEHOLD GOODS FORWARDERS
ASSOCIATION OF AMERICA, INC.

Terry R. Head, President

cc: HHGFAA Executive Committee

Att. No. 4
page 1 of 2

HOUSEHOLD GOODS FORWARDERS ASSOCIATION OF AMERICA, INC.

hhgfaa
Household Goods Forwarders Association of America, Inc.

5904 RICHMOND HIGHWAY, SUITE 404 • ALEXANDRIA, VIRGINIA 22303
TELEPHONE (703) 317-9950 • FAX (703) 317-9960
E-Mail: info@hhgfaa.org • Website: http://www.hhgfaa.org

TERRY R. HEAD
President
Alexandria, Virginia

GEORGIA ANGELL
Chairperson
Monroe, Washington

RANDALL K. GROSIER
Vice Chairman
Jacksonville, Florida

MICHAEL COBB
Executive Committee
Member at Large
Seattle, Washington

JAY MOORE
Executive Committee
Member at Large
Long Beach, California

MICHAEL RICHARDSON
Executive Committee
Member at Large
Orange Park, Florida

MARIO S. RIZZO
Executive Committee
Member at Large
Seattle, Washington

JACQUELINE M. AGNER
Associate Members' Representative
Sumner, Washington

DOUGLAS W. FINKE
Associate Members' Representative at Large
Louisville, Kentucky

MICHAEL D. GILBERT
YP-35 Representative
Vista, California

ALAN F. WOHLSTETTER
General Counsel
Washington, D.C.

November 4, 2005

(via e-mail)

Colonel Steven L. Amato

Deputy Chief of Staff
for Passenger and Personal Property
Headquarters Surface Deployment
and Distribution Command
Department of the Army
Hoffman Building II
200 Stovall Street
Alexandria, VA 22332-5000

**Re: Elimination of the Pass-through for the PowerTrack Fee**
**- Supplement Information**

Dear Colonel Amato:

I would ask you to consider in your decision on the reimbursement of the one percent PowerTrack fee which was the subject of my letter of November 2, 2005, a matter which just was brought to my attention.

Solicitation I-16, effective October 1, 2005, was amended to require billing by PowerTrack by publication on the SDDC website on October 3, 2005, with a notice that the effective date of the change was retroactive to October 1, 2005. This change was not made available to TSPs until four months after initial rate filing and therefore was not a part of the solicitation pursuant to which TSPs submitted their bids.

This action is most instructive since its supports one of the points I made in my letter of November 2, namely that changes in the SDDC procurement need to be reflected in the solicitation and second, that TSPs must have the amended solicitation when they submit their bids.

Att. No. 4
page 2 of 2

Further the amendment to the solicitation concerning PowerTrack billing (Item 426) was made retroactive on its face to October 1, 2005. Actually, if allowed, it would be retroactive to September 2005, since shipments are booked, and GBL contracts issued, a month before the effective date of a solicitation. We know of no basis for the retroactive amendment of contracts.

Similarly it is our understanding that the Domestic Rate Solicitation for the cycle commencing November 1, 2005, failed to contain any provision requiring PowerTrack billings at the time bids were submitted and we have not been able to determine whether an appropriate revision of the domestic solicitation has been furnished industry to date.

I would ask you to consider the matter set forth in this letter since, in our opinion, it supports our contention that reimbursement of the PowerTrack cannot properly be eliminated on October 1, 2005.

Sincerely,

HOUSEHOLD GOODS FORWARDERS
ASSOCIATION OF AMERICA, INC.

Terry R. Head, President

cc: HHGFAA Executive Committee

Att. No. 5

Subj: FW: Current Program Teleconference
Date: 11/9/2005 5:47:02 PM Eastern Standard Time
From: hickst@sddc.army.mil
To: THead73168@aol.com
CC: charles.white@HHGFAA.ORG, dennis.williams2@sddc.army.mil, SMichael@MOVING.ORG, jackd@sddc.army.mil, AmatoS@SDDC.ARMY.MIL

Terry:

This responds to your email to Donna Jack shown below. We have provided you with our position on the USDA and PowerTrack Fee issues previously, advising that there will not be a pass through cost for these services. Insofar as the Pier Pass issue is concerned, the same position is taken in that costs that may be incurred as a result of the Pier Pass rule cannot be a pass-through charge.

Tom

-----Original Message-----
**From:** THead73168@aol.com [mailto:THead73168@aol.com]
**Sent:** Wednesday, November 09, 2005 9:11 AM
**To:** charles.white@HHGFAA.ORG; dennis.williams2@sddc.army.mil; SMichael@MOVING.ORG
**Cc:** jackd@sddc.army.mil
**Subject:** [ SPAM ] Re: Current Program Teleconference

If it can't be today then it needs to be tomorrow early.

We need guidance if not resolution on these issues for the rate filing. And the carriers need to know by tomorrow so as to be able to get their rate worked and into the filing services by Friday or Monday, since rates are due on the 16th.

PierPass
Fumigation
PowerTrack Fee

If we don't have resolution, then we will either ask for or take action to delay the rate filing

Terry

Forwarded Message:

Att. No. 6

Subj: **RE: FW: Current Program Teleconference**
Date: 11/10/2005 5:06:47 PM Eastern Standard Time
From: AmatoS@SDDC.ARMY.Mil
To: THead73168@aol.com
CC: charles.white@HHGFAA.ORG, hicksl@sddc.army.mil, hutchinsonc@sddc.army.mil
*Sent from the Internet (Details)*

Terry,

**Mr. Hicks accurately represented this Directorate's position, but I believe clarification is in order due to the potentially ambiguous semantics of the term pass-through and, more to the point, when a pass-through will apply. To avoid confusion, I will avoid using the term pass-through.**

**It appears that the PierPass surcharge is not covered by the SFR. We are considering ways to handle this, including modifying the solicitation to include that surcharge. We recognize that the timing of the next rate filing, which is upon us, imposes challenges.**

**I am sending you a letter on the USDA rule that you refer to as "Wood Fumigation." As you know, the rule allows for an alternative to fumigation; the rule does not mandate fumigation. But I understand why you might choose not to refer to the USDA rule as the "Treated Wood" rule, despite that being as accurate or incomplete as the name you have selected.**

**I will send to you a letter outlining my rationale for the 1% PowerTrack surcharge not being appropriate for separate reimbursement. That rationale is consistent with my rationale for the PierPass surcharge: whereas the PierPass surcharge appears to be excluded by the solicitation from TSPs' SFR, by contrast the solicitations (domestic and international) include in TSPs SFR rates charges such as the 1% PowerTrack fee. Stated another way, whereas the solicitations apparently place the risk of the added PierPass surcharge on the government, the solicitations place the risk of a fee such as PowerTrack on TSPs' firm-fixed-price SFR. There are other reasons beside this that I will address in my letter that go to notice, fairness and equity.**
**Regards,**
**Col A**

**From:** THead73168@aol.com [mailto:THead73168@aol.com]
**Sent:** Thursday, November 10, 2005 11:37 AM
**To:** amatos@sddc.army.mil
**Subject:** Fwd: FW: Current Program Teleconference

Colonel Amato,

Please refer to the email response I received from Mr. Hicks yesterday evening.

DECLARATION OF JOSEPH M. HARRISON

My name is Joseph M. Harrison. I am President of the American Moving & Storage Association (AMSA), a non-profit association whose membership consists of household goods carriers and local moving and storage companies throughout the United States. We have approximately 3400 members of which 900, to some extent, are direct participants in the movement of military household goods. Although our members service intrastate, interstate and international shipments, the primary focus of AMSA is on the domestic procurement.

I am familiar with the procedures followed by the Surface Deployment and Distribution Command (SDDC), but my statement specifically addresses the DW05 procurement. This procurement initially was to cover the six-month period from October 1, 2005 through March 31, 2006 but was later postponed to begin November 1, 2005 and terminate with April 30, 2006. I am also familiar with the Families First (or DPS) procurement, Phase II of which was initially to become effective on October 1, 2005, along with DW05 and IW05 but was subsequently postponed to February 1, 2006 and then postponed again to an effective date not yet determined by SDDC.

The DW05 solicitation, like others before it and after, has two rate-filing cycles: The first known as the initial filing cycle requires a filing by a

participant to preserve the option of filing rates during the second cycle known as the me-too cycle. In DW05, the initial cycle ended on May 23, 2005 and the me-too cycle ended on August 26, 2005.

For several years, SDDC and its predecessor, the Military Traffic Management Command (MTMC), have been working on the new procurement known as Families First, which distributes shipments on a best value standard, rather than on the basis of lowest cost which is presently the case. This procurement was also known as the Defense Future Personal Property System (DPS). The full roll- out of Families First is known as Phase II, and as I have previously stated, is not yet effective.

Another aspect of Families First is the use of an electronic billing and payment system known as PowerTrack. This was initially tested on a voluntary basis in the current household goods program beginning March 29, 2004. By Notice published in the Federal Register on February 3, 2005, as amended by SDDC's email of February 15, 2005, the use of PowerTrack was made mandatory effective April 15, 2005. However, at the time of the rate filing for DW05, none of the Air Force shipments could be billed by PowerTrack and were required to continue to be billed through the military finance offices. Further, there were a number of military bases of the other military services which were not yet PowerTrack-certified and which had to be billed to the

military finance offices. In fact, for a shipment to be billed by PowerTrack, both the origin and destination bases had to be PowerTrack-certified. In other words no shipments originating at Air Force installations could be billed by PowerTrack nor could any shipments which originated at PowerTrack-certified installations of the other military services but which were destined for Air Force installations.

U.S. Bank, the contractor selected by the government to administer PowerTrack, originally charged a fee of 1 percent of the total TSP (Transportation Service Provider) billings, which fee was raised to 1.1 percent effective October 2005. From the inception, SDDC reimbursed contractors for this fee and consistently advised the TSPs that reimbursement would continue until Families First, Phase II was then to become effective. The first notification given to TSPs that reimbursement of the PowerTrack fee would not be paid was by email from SDDC, dated October 31, 2005.

SDDC suggested that TSPs increase their rates to reflect the additional cost of the PowerTrack fee. The TSPs could not do that because of restrictions in the DW05 solicitation. I point out that solicitation DW05 had a cap on rates which placed a maximum on the rates a TSP could file and that cap was not adjusted to cover the PowerTrack fee. Further, there were a number

of accessorial services whose price was fixed by the terms of the solicitation and similarly the PowerTrack fee could not be included in these charges.

I further point out that the rates filed by TSPs cannot vary with the military service involved, i.e. they are the same whether it is an Air Force, Army, Navy, Marine, or Coast Guard shipment. Rates are bid to a destination state, which could include an Air Force base and a base of another Service that participates in PowerTrack. For this reason, if the rates submitted were increased to include the one percent PowerTrack fee, as suggested by SDDC, TSPs would enjoy a windfall by billing and being paid for a service they did not perform, viz. reimbursement of the PowerTrack fee. In my opinion, this would have been unreasonable. The unfairness to the government of such a situation was recognized by the former Deputy Chief of Staff for Passenger and Personal Property of SDDC, Colonel Thomas Keller in his letter addressed to me, dated January 24, 2005, which I attach to this statement.

At the time of the issuance of the Federal Register Notice, all rate filings, including DW05 and DPS (or Families First Phase II) were to be effective October 1, 2005. However, on June 22, 2005, SDDC announced a postponement of the Families First Phase II (DPS) rate filing to February 1, 2006. Our members asked AMSA to resolve with SDDC whether the PowerTrack fee would continue to be reimbursed until Phase II of Families

First or whether it would cease with October 1, 2005, the date of IW05, with November 1, 2005 for DW05 or with the effective date of Families First Phase II, which was initially postponed to February 1, 2006. AMSA was consistently advised that such reimbursement would continue until Phase II of Families First. Scott Michael, AMSA's Vice President – Government Traffic, who represents AMSA on all military matters of interest to our membership, will furnish the details in this regard.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Joseph M. Harrison

Dated this 19th day of April 2006 at Alexandria, Virginia.

Att. No. 1
page 1 of 2

DEPARTMENT OF THE ARMY
HEADQUARTERS MILITARY TRAFFIC MANAGEMENT COMMAND
200 STOVALL STREET
ALEXANDRIA, VA 22332-5000

JAN 24 2005

Personal Property Division

Mr. Joe Harrison
President
American Moving and Storage Association
1611 Duke Street
Alexandria, VA 22314-3482

Dear Mr. Harrison:

This responds to your letter dated January 11, 2005, regarding required carrier participation in Phase I of Families First, the 1% surcharge fee to US Bank and other associated cost carriers will incur. As always, your comments are welcome and we appreciate the opportunity to address your concerns.

As you are well aware, we began our evaluation phase in March 2004 and at that time we made the decision to compensate volunteer Transportation Service Providers (TSPs) by allowing a 1% surcharge rather than asking TSPs to factor this charge into their rates due to the limited number of participating sites. We are currently up to 26 sites, however, the traffic between these sites reflect only about 30% of the traffic from the sites and includes only 205 of our approximately 1,000 TSPs participating in Phase I.

The Military Surface Deployment and Distribution Command (SDDC) intends to implement Phase II of Families First on October 1, 2005 and as such we believe it is imperative that all sites be trained and participating in Phase I in order to alleviate additional workload during training and implementation of Families First and the Defense Personal Property System (DPS). The Families First program will encompass all PPSO sites by June 2005. Therefore, all TSPs will be required to be participants in Phase I prior to this rollout. We are in the process of completing a Federal Register Notice (FRN), which will outline the extent of the mandated participation.

While SDDC does understand that there may be additional initial start-up costs associated with the implementation of the new processes and systems, we believe the 1% surcharge fairly compensates industry until October 2005 when TSPs will be able to file rates in DPS. This is intended to be an interim solution and we believe this is a prudent approach to protect the interest of the Department. Until all sites and all TSPs are participating it would not be cost effective for the charges to be included the transportation rate.

Lastly, it is SDDC's view that the TSPs have increased their rates over the past several years without corresponding quality service improvements. We hope to gain added value with TSP participation in Phase I as we prepare to rollout Phase II and DPS in October 2005.

Att. 1
page 2 of 2

-2-

My thanks to you and your association for your continuing support to improve the Personal Property Program for our service members and their families. Please feel free to contact me if you have any questions or comments

Sincerely,

Thomas Keller
Colonel, U.S Air Force
Deputy Chief of Staff for Passenger
And Personal Property

DECLARATION OF SCOTT MICHAEL

My name is Scott Michael and I am Vice President – Government Traffic of the American Moving and Storage Association (AMSA) and in that capacity represent our membership in all matters before SDDC. During the past several years, the predominant amount of my time in this area has involved Families First, including the use of PowerTrack for billing and payment of certain military household goods shipments.

Phase I of Families First became effective on March 29, 2004 and was a voluntary program which substituted billing and payment by PowerTrack for services performed under the current military personal property program for those bases which were PowerTrack-certified. The number of participating carriers and bases increased gradually over time. Transportation Service Providers (TSPs) billing by PowerTrack were to be reimbursed the fee charged by U.S. Bank, the contractor selected by the government to administer PowerTrack. It was my understanding that the PowerTrack fee would continue to be reimbursed until Phase II of Families First became effective. This understanding was based upon oral and written advices received from SDDC, as more specifically set forth later in my statement.

Phase II of Families First is planned to be a procurement substantially different from that currently in effect, the principal features of which are to

substitute best value for cost in shipment distribution, to require TSPs to increase their liability for lost or destroyed shipments to full undepreciated value, and the use of a comprehensive new computer system called DPS, as well as billing all shipments by PowerTrack (from Phase I).

By Notice in the Federal Register, dated February 3, 2005, SDDC made billing by PowerTrack mandatory on shipments moving to and from those bases which were PowerTrack-certified and provided that reimbursement of the PowerTrack fee would cease with rate filings in the current program (Winter 2005-6 for Domestic (DW05) and Winter 2005-6 for International (IW05)) and DPS (or Families First Phase II), all of which were scheduled to be effective on October 1, 2005. However, SDDC, on June 22, 2005, postponed the effective date of Families First Phase II from October 1, 2005 until February 1, 2006, and subsequently postponed it indefinitely. This meant that the current program rate filings (DW05 and IW05) would no longer be merely a fall-back set of rates in case something went wrong with Families First, but would actually be used.

When, as originally provided, DW05, IW05 and Families First Phase II were all to have rates effective on October 1, 2005, it was clear that TSPs would not be reimbursed for the PowerTrack fee after that date. However, with the postponement of Families First Phase II to February 1, 2006, our membership needed to be reassured that the PowerTrack fee reimbursement would continue

until Phase II of Families First, i.e. until February 1, 2006 as we had anticipated, or whether it would terminate with DW05 and IW05. A copy of my email to Mr. Steven Savage, an official of IBM, one of the government contractors selected by SDDC to administer the PowerTrack program, dated June 7, 2005, raising this question, together with his reply on the following day, is attached to my statement as No. 1. I made this inquiry based on informal information I had that Families First Phase II would most likely be postponed, in advance of SDDC's official announcement of the postponement on June 22, 2005. During this time period, Mr. Savage was sending weekly email updates to industry listing the military bases that were live with PowerTrack, as well as specific emails whenever a new base would go live. As such, he was a key liaison with the government on PowerTrack issues.

I attach as No. 2, a copy of my email dated August 9, 2005, making this inquiry directly to Mr. George Thomas, SDDC's designated representative on PowerTrack, to confirm Mr. Savage's advice. On August 10, 2005, Mr. Thomas responded, clearly stating that the PowerTrack fee will continue to be reimbursed throughout Phase I of Families First and will continue until DPS, or Phase II of PowerTrack, becomes effective, then scheduled for February 1, 2006. (Att. No. 3). Mr. Thomas' further stated that when reimbursement of the PowerTrack fee ceases TSPs "must factor this into their rates."

In addition to these written responses, Mr. Thomas several times told a number of participating carriers that the PowerTrack fee reimbursement would continue until Families First Phase II. This is indicated by Mr. Thomas's statement: "Don't know how many times I will have to answer this question….". (Att. No. 3).

I directed my inquiries to George Thomas since he was SDDC's designated representative on PowerTrack billing matters. He was the contact person named by SDDC in its Federal Register Notice on this subject, dated February 3, 2005; he was the individual who was selected by SDDC to brief the industry on PowerTrack developments at the numerous meetings which were held on Families First; and, in fact, he advised me on several occasions not to pursue these matters with other people in SDDC but to direct all inquiries to him.

I also knew that other representatives of TSP interests, Charles White of the Household Goods Forwarders Association and Sue Fuchtman of The Day Companies, had similarly requested advice from George Thomas as SDDC's designated official on PowerTrack matters and that Mr. Thomas, in several emails, copies of which I received, gave the same advice that he gave me, namely, that TSPs would continue to be reimbursed for the PowerTrack fee until Phase II became effective.

Because of SDDC's consistent advices, through George Thomas, that TSPs would be reimbursed until Phase II of Families First, I and the members of AMSA were completely surprised when SDDC reversed the consistent advices given industry by Mr. George Thomas, and advised industry in October, 2005 that the fee would not be reimbursed after October 1, 2005. Official notice was furnished in an email dated October 31, 2005, although word of the decision had started coming out several days earlier.

Although the SDDC notice suggested that after reimbursement of the PowerTrack fee was stopped, carriers should reflect that charge in their bid rates, there appear to be two obstacles to that: first, a number of accessorial service charges, specifically those listed in Item 430 of the solicitation, were fixed (ie. not subject to the carrier's bid) and thus could not be increased by the carrier to reflect the PowerTrack fee (Attachment No. 4); second, the DW05 solicitation placed a limit on the rates TSPs could file and this maximum had not been adjusted to reflect the additional 1 percent PowerTrack charge. Therefore, by the terms of SDDC's solicitation, the carrier bid rates could not be increased to reflect the PowerTrack fee. Furthermore, the solicitation itself did not include any notification to carriers of this change, so they would not have known to do so when determining their rate bids. Normally, each solicitation includes a list of

changes on the cover of the solicitation, but the list for DW05 did not mention any change in the reimbursement of the PowerTrack fee.

In addition, only certain shipments are billed using PowerTrack and are thus subject to the 1% fee. For a billing to be made via PowerTrack both the origin and destination base must be PowerTrack-certified. The Air Force is still not participating in PowerTrack, so no Air Force installations are included. At the time of the initial rate filing for DW05 (May 23, 2005), 72 bases were live with PowerTrack and 28 Army, Navy, and Marine Corps bases were still being trained, in addition to the Air Force locations that were not participating. As a result, if there were a shipment originating at an Army installation which was PowerTrack-certified but destined to an Air Force destination, or to a military base, either of which was not PowerTrack-certified, the billing would be required to be made under the normal procedure, viz. to a military finance office and not by PowerTrack. Therefore there is no way TSPs could include the PowerTrack fee in their bid rates without overbilling the government on shipments which could not be billed via PowerTrack. If TSPs increased their rates by the amount of the PowerTrack fee, as suggested by SDDC, they would, on many occasions, receive a payment for services they did not perform. This, in my opinion, would have been unreasonable.

Lastly, I want to point out that Appendix 3A, which was included in the solicitation covering DW05 rates, provided for the furnishing of specified documents to support TSP billings. (Att. No. 5). This is required under the current program but is entirely inapplicable to PowerTrack billings, which is an electronic billing and payment system the principal purpose of which is to eliminate paper documents. In light of this, a serious question exists as to whether the DW05 solicitation provides exclusively for PowerTrack billings.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Scott Michael

Dated this 19th day of April 2006 at Alexandria, Virginia.

To: Michael, Scott
Cc: Charles.White@hhgfaa.org; Thom... ..@sddc.army.mil
Subject: Re: 1% fee

Att. 1

Scott -

I stand corrected. I checked and as I understand it now you are correct, the 1% fee will coincide with Phase II

Sorry for the confusion.

Thanks
Steve

Contractor - SDDC (Families First Program)

Steven Savage
IBM Business Consulting Services. Fairfax, VA
steven.a.savage@us.ibm.com
703.653.7294 (phone)

"Michael, Scott" <SMichael@MOVING.ORG>

08/07/2005 03:18 PM

To Steven A Savage/Fairfax/IBM@IBMUS

cc <Charles.White@hhgfaa.org>

Subject 1% fee

Steve,

Attached is the list of changes in the Rate Solicitation for the current program, effective October 1 (otherwise known as the backup in case Families First is postponed). I don't see any indication that the 1% PowerTrack fee will no longer be covered by the Government. We had been led to believe that this fee was tied to Phase I, and thus would be covered so long as we're in Phase I.

Incidentally, I liked your answer to the question on the delay. Kind of refreshing to get a straight answer on that issue.

Scott Michael
AMSA[attachment "changes.pdf" deleted by Steven A Savage/Fairfax/IBM]

-----Original Message-----
Att. 2

**From:** Michael, Scott [mailto:SMichael@MOVING.ORG]
**Sent:** Tuesday, August 09, 2005 11:47 AM
**To:** SDDC - George Thomas Family F (E-mail)
**Cc:** Steve Hollingsworth; Tim Helenthal; Scott Kelly; Bob Ewing; wilken@stevensworldwide.com
**Subject:** FW: 1% fee

George,

Can you please confirm that Steve's information is correct?

Scott

-----Original Message-----
**From:** Steven A Savage [mailto:steven.a.savage@us.ibm.com]
**Sent:** Wednesday, June 08, 2005 4:09 PM

10/31/2005

Att. 3

**From:** Thomas, George [thomasg@sddc.army.mil]
**Sent:** Wednesday, August 10, 2005 1:44 PM
**To:** 'Michael, Scott'
**Cc:** Steve Hollingsworth; Tim Helenthal; Scott Kelly; Bob Ewing; wilken@stevensworldwide.com; Charles L. White; Steven A Savage (E-mail)
**Subject:** 1% fee

Scott,

Just returned from Business Travel and am just now receiving your e-mail. Don't know how many times I will have to answer this question but here goes.....

The TSP 1% reimbursement fee will continue for all TSPs participating in Phase I until DPS rolls out in Feb 06. Pls note that all TSPs must factor this into their rates for DPS so when it does roll out, they will receive compensation. However for now and during the remaining time of Phase I, they will bill the 1% fee the same way they are now. Billing for the 1% fee will cease when DPS rolls out.

Hopefully this answers your question.

R/George

*George Thomas, Jr.*
*Program Development Branch*
*(703) 428-2237*
*Fax (703) 428-3390*
*thomasg@sddc.army.mil*

## DOMESTIC PERSONAL PROPERTY RATE SOLICITATION D-10

| | |
|---|---|
| **WEST VIRGINIA:** Counties of Brooke, Hancock, Marshall, Ohio, & Wetzel | 0.80 |
| **WISCONSIN:** | |
| Counties of Douglas, Milwaukee, Ozaukee, Washington, & Waukesha | 1.05 |
| County of Dane | 0.45 |
| Counties of Kenosha, Racine, & St. Croix | 0.80 |

NOTE 1: On shipments which are diverted back to point of origin, this additional charge shall apply twice.

NOTE 2: When a shipment is picked up or delivered at more than one place, the additional charge shall apply only to the weight of the portion of the shipment picked up or delivered in areas described above.

NOTE 3: The additional charge shall be based on weight at which transportation rate is based, EXCEPT when provision of Note 2 is applicable.

NOTE 4: Where reference is made to a county, corporate limits of points and places partly within such county shall be considered as wholly within the county. Where cities and mileage radius thereof is shown, cities or points partly within the described number of miles shall be considered as wholly within the described number of miles.

NOTE 5: On shipments, or portions thereof, stored in transit (other than at origin), the point of storage shall be considered the destination point for application of the additional transportation charge. No additional transportation charge shall be assessed on such shipments upon final delivery from SIT.

ITEM 429. [MSG] **MISCELLANEOUS CHARGE**

Any authorized charge incurred by the Transportation Service Provider and, not covered by any other designated service code, and not performed by a third party service, shall be billed as a miscellaneous charge. A description of the service is required.

ITEM 430. **ITEMS EXCLUDED FROM RATE PERCENTAGE APPLICATION**

a. The following items will not be subject to the rate percentage filed by Transportation Service Providers:

(1) Item 410, Partial Delivery Weighing and Reweigh Charges (EXCLUSION APPLIES TO REWEIGHS ONLY)

(2) Item 415, Additional Shipment Charges

(3) Item 416, Full Replacement Protection

(4) Item 421, Household Appliances or Other Articles Requiring Special Servicing by Third Party for Safe Transportation

(5) Item 422, Ferry, Bridge, and Service Charges

(6) Item 424, SIT and Warehouse Handling Charges at destination

(7) Item 426, Shipments from Nontemporary Storage Warehouses and SIT warehouses, in certain instances

Att. No. 4
page 2 of 2

PAGE NO. 4-67 MOD NO. 0
PAGE: ORIGINAL
EFF DATE: 1 OCT 05

**DOMESTIC PERSONAL PROPERTY RATE SOLICITATION D-10**

(8) **Chapter IV, Appendix 4E** Pickup or Delivery Transportation Rates Applying on SIT Shipments **(EXCLUSION APPLIES TO DELIVERY OUT OF SIT AT DESTINATION ONLY)**

(9) Any accessorial services performed in connection with destination SIT.

Att. 5

**APPENDIX 3A-1 MOD. NO. 0**
**PAGE: ORIGINAL**
**EFF DATE: 1 OCT 05**

**DOMESTIC PERSONAL PROPERTY RATE SOLICITATION D-10**

## BILLING PROCEDURES/INSTRUCTIONS

For services rendered, the Transportation Service Provider agrees to bill through CWA in accordance with procedures disseminated by the military services (including Coast Guard) and SDDC. Valuation charges shall be identified separately from all other charges on billing documents. The following documents, if applicable, must accompany the Transportation Service Provider's payment request, unless otherwise specified.

| | Army & Air Force | Navy, Marine Corps, & Coast Guard |
|---|---|---|
| (1) Original "Public Voucher for Transportation Charges" | X | X |
| (2) Original BL. Accomplished or supported by certification of liability as specified in Item 7 below | X | X |
| (3) Copy of original SF 1113 for supplemental billings | X | X |
| (4) Waiver for agent to bill for destination services | X | X |
| (5) Original of scale weight ticket(s) prepared by weightmaster(s) | AR | X |
| (6) Original DD Form 619, Statement of Accessorial Services Performed, when charges are assessed for accessorial services, excluding SIT | AR | X |
| (7) Certification of liability during SIT period until delivery to consignee when billing separately for charges from point of origin to point of storage | AR | X |
| (8) Copy of commercial ocean/air freight bill for shipments between points in CONUS and points outside of CONUS | AR | X |
| (9) "Justification Certificate for Use of a Foreign Flag Vessel or Aircraft" when American flag service is unavailable or necessity of the traveler's mission requires use of foreign flag | AR | X |
| (10) Original Diversion Certificate; signed by the requesting PPSO, authenticating the diversion or reconsignment | AR | X |
| (11) US-Canada Transit Manifest Customs Form (Alaska land shipments only) | AR | X |
| (12) "Certification of Ocean Freight Charges" | AR | X |
| (13) A copy of the "one-time-only" rate tender | AR | X |

***Legend:*** ***"X" - Required; "AR" - As Requested***

**NOTES:**

(1) The Transportation Service Provider may, at its option, prepare a certificate bearing a statement designating the warehouse agent of the linehaul Transportation Service Provider for SIT and delivery-out charges (and other applicable related charges) authorized by the GBL to which the certificate pertains. (GAO Policy and Procedures Manual for Guidance of Federal Agencies, paragraph 3075.20).

(2) Applies only to shipments within CONUS and between CONUS and points outside CONUS. All DD Forms 619 submitted with billing for payment will be fully completed with applicable entries except for the "Unit Price" and "Charge" columns. Completion of these two columns is optional with the Transportation Service Provider or its agent. If the Transportation Service Provider or agent completes these columns on the DD Form 619 submitted with the billings, the total of accessorial charges may be shown on the TSP's billing in lieu of itemization of individual unit prices or charges. When supplemental bill for SIT is presented by the linehaul Transportation Service Provider or agent, in addition to other documents, a legible memorandum copy of the GBL and a copy of the original payment document will be included.

**DECLARATION OF RANDALL K. GROGER**

My name is Randall (Randy) K. Groger and I am President of Air Land Forwarders, Inc. My company is approved by SDDC for both international and domestic shipments, with the servicing of international shipments being of primary importance to my company. Air Land Forwarders has participated in the personal property program for over thirty years. I have been with the company since 1984. One of my duties is to establish and file rates in these procurements. The international program is highly competitive with shipments being awarded on the basis of cost and on a differential as low as one cent per hundredweight (cwt). Under the current program, rates are filed for six month periods and the rate filing consists of an initial filing cycle and a me-too cycle. The me-too cycle determines the rates which will move the traffic. At the time I filed my company's me-too rates, I had been advised that SDDC would continue to reimburse my company for the PowerTrack fee until Families First Phase II became effective. Had I known SDDC's intention, shared with TSPs after the rate filings had been completed, that it would no longer reimburse the PowerTrack filing fee, beginning with rates filed during IW05, the cost of filing by PowerTrack would have been reflected in my rates. In my opinion, this would not have been fair to the government since no Air Force shipmentsand no

shipments originating at or destined to any military base which had not been PowerTrack-certified could be billed by PowerTrack. I believe that SDDC's determination to reimburse TSPs only when PowerTrack is used for billing is the fairest procedure, both from the standpoint of the TSP and the government. If we had reflected the PowerTrack fee in our rates, we would have had the unfair result that the government would be charged for the use of PowerTrack services on shipments where PowerTrack was not and could not be used, e.g. Air Force shipments. In addition, there were a number of military bases, other than Air Force, which could not be billed by PowerTrack at the time I filed our IW05 rates. (Att. No. 1). On the other hand, if the fee were not reimbursed by a pass-through, as wasthe case prior to IW05/DW05, Air Land and other TSPs would be required to provide this additional service without compensation.

Further, in the international procurement, there are many accessorial services which we and other TSPs are required to perform, the charges for which are subject to the PowerTrack fee. However, the terms of the SDDC solicitation fixes those charges and there is no way that a TSP can increase those charges to reflect the additional expense of billing by PowerTrack. This, in my opinion, is unfair. Fairness, in my opinion, dictates that a person requiring a service, be it a government agency or otherwise, should compensate the provider of the service.

Until well after Air Land's rates had been filed, I had understood from discussions with Terry Head, President of the HHGFAA, and Charles White, the Association's Director of Government Military Relations, that the PowerTrack fee would continue to be reimbursed until the roll-out of Families First Phase II. In light of this, I submit it was unfair for SDDC to change its position after the rate filings for IW05 had been completed.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Randall K. Groger

Randall K. Groger

Dated this 18th day of April 2006 at Jacksonville, Florida.

Att. No. 1

**Military Bases, In Addition to Air Force Bases, Not Available for Billing By PowerTrack at Time of IW05**

| | |
|---|---|
| Army | Fort Detrick, MD |
| Army | Fort Lee, VA |
| Army | Fort Stewart, GA |
| Army | Fort Polk, LA |
| Army | Red River Army Depot, TX |
| Army | White Sands Missile Range, NM |
| Army | Fort Irwin, CA |
| Army | Fort Buchanan, PR |
| Army | US Army 10th ASG, Torii Station, Okinawa, Japan |
| Army | Euro Theater CPPSO, Germany |
| Army | Fort McPherson, GA |
| Army | Fort Bliss, TX |
| Navy | Naval Submarine Base, Groton, CT |
| Navy | Naval Air Station Patuxent River, MD |
| Navy | CPPSO Charleston, SC |
| Navy | Naval Air Station Key West, FL |
| Navy | Naval Air Station Joint Reserve Base, LA |
| Navy | NBVC Port Hueneme, CA |
| Navy | El Centro Naval Air Facility |
| Navy | FISC, Seal Beach Detachment, CA |
| Navy | Naval Air WPNS Station, China Lake, CA |
| Navy | Naval Postgraduate School Monterey, CA |
| Navy | NAV AIR Facility, Atsugi, Japan |
| Navy | USN Regional CTNG CTR, Singapore |
| Navy | NSA Bahrain |
| Navy | NAVSUPPACT Souda Bay, Crete, Greece |
| Navy | US NAT SUP Unit, Lisbon, Portugal |
| USMC | MC Air Station, Iwakuni, Japan |