IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| STEVENS VAN LINES, INC., ET AL., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 05-1278C |
| v. | ) | (Judge Smith) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT

Plaintiff ("Stevens"[1]) has moved for summary judgment pursuant to RUSCFC 56, seeking reimbursement for fees that Stevens paid between October 2005 and approximately April 2006 to have its contract payments processed electronically. For the following reasons, Stevens's motion should be denied and we respectfully request the Court enter judgment in our favor instead.

OVERVIEW

Although the subject matter and terminology at issue in this case is somewhat arcane, the operative facts are much simpler than they may first appear, and the legal issue is even simpler: In February 2005 the Government published a notice in the Federal Register that the temporary reimbursement of a payment processing fee would cease in October 2005. In May 2005 Stevens submitted its contract bid prices. Subsequent to May 2005, several

[1] We will refer to all plaintiff's in this consolidated case singly as "Stevens."

Government employees, but primarily Mr. George Thomas (all of whom lacked authority to bind the Government), contradicted the published information and suggested in communications with offerors that reimbursement would continue beyond October 2005 – but the solicitation/contract was never modified to provide the continued reimbursement. The Government discontinued the reimbursement in October 2005 consistent with the Federal Register notification. In this case, Stevens seeks to have the reimbursements extended (presumably from October 2005 through April 2006) based upon the communications discussed above. The legal question, and the crux of this case, is simply whether the indications that reimbursement would continue beyond October 2005 are contractually binding upon the Government. Because there was no express contract term providing for post-October 2005 reimbursement, and it is black-letter law that Government employees without authority cannot bind the Government contractually, Stevens's claim fails and should be dismissed.

## STATEMENT OF FACTS

As set forth in more detail in our response to Stevens's proposed findings of uncontroverted fact, we do not dispute the majority of Steven's proposed facts. More importantly, however, the majority of Stevens's proposed facts are immaterial anyway, and our disagreements generally do not affect the few material facts that are operative. In a nutshell, we do not dispute the

authenticity of the written statements, primarily emails from Mr. Thomas, that are attached to Stevens's motion. Pl. App. 31, 57, 59, 66.[2] Those statements (plus the terms of the contract, and the notice published in the Federal Register) are the only material facts in this case. This case will be resolved by the Court's determination of whether Mr. Thomas's communications are contractually enforceable against the Government. With that in mind, we present here a brief statement of background facts that we believe are not in material conflict with Stevens's longer and more detailed proposed facts.

The Surface Deployment and Distribution Command ("SDDC" or "Government"), an arm of the Department of Defense, provides transportation of household goods and unaccompanied baggage for military members and their families. PPFUF 1. SDDC provides this service by soliciting generic rate quotes from transportation providers (referred to as "TSPs") and issuing individual work orders as the need arises. PPFUF 2. SDDC obtains the rate quotes in six month "traffic cycles" that are divided into domestic and international categories. PPFUF 2. In 2004, SDDC tested an electronic system for billing and payment by

---

[2] Citations to Stevens's motion for summary judgment are "Pl. Mot. #." Citations to the appendix attached to Stevens's motion for summary judgment are "Pl. App. #." Citations to Stevens's proposed findings of uncontroverted fact are "PPFUF #." Citations to the declarations attached to this opposition/cross motion are "[name] declaration ¶ #."

the TSPs called "Powertrack" which was administered by a company called U.S. Bank. PPFUF 3. U.S. Bank charged the TSPs a one-percent fee for its service which was reimbursed to the TSPs by the Government during the 2004 test phase. PPFUF 3.

Following the 2004 test of Powertrack, in February 2005, SDDC published a notice in the Federal Register to the effect that the entire transportation solicitation/quotation/award system would be restructured (eventually transforming to a system called "Families First" (also called "DPS")), including the mandatory use of Powertrack for billing and payment. Pl. App. 70-71. TSP's were advised that the one-percent fee would continue to be reimbursed until the Families First was in place, or until the effective date of the rates then being solicited became effective – in October 2005. Id.

The Families First system was slow to develop, eventually being shelved indefinitely. PPFUF 8, 11. During the solicitation/quotation period under the existing system, but after May 18, 2005, when the TSPs submitted their initial rate quotes, George Thomas, a point of contact for the Government, exchanged communications with several TSPs where he indicated that the one-percent Powertrack fee would be reimbursed beyond October 2005. Pl. App. 31, 57, 59, 66. This advice was contrary to the express wording in the Federal Register that the fee reimbursement would cease after October 2005. Pl. App. 70-71.

Although indicating that Powertrack reimbursement would continue beyond October 2005, Mr. Thomas's communications also advised TSPs to include the cost of the Powertrack fee in their October 2005 rates.[3] Pl. App. 31, 57, 59, 66. Mr. Thomas's advice about continuing reimbursement and/or including the Powertrack fee in the TSPs rates came after the TSPs had submitted their initial rates in May 2005. Id.

The TSPs's rate quotations have been used as the basis for payments since that time. PPFUF 20. No reimbursements of the Powertrack fee have been made since October 2005. PPFUF 25-26, Pl. App. 7. A new traffic cycle began in April/May 2006. PPFUF 2.

## ARGUMENT

### I. Standard of Review

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). Where no genuine dispute exists as to any material fact, summary judgment

[3] If the TSPs had heeded the notice in the Federal Register and included the Powertrack fee in their October 2005 rates, Stevens would not have a claim and this case would not exist.

is required. Anderson, 477 U.S. 242 (1986). A genuine issue of material fact is one that could change the outcome of the litigation. Id. at 247. The party moving for summary judgment need not prove the absence of an essential element of the nonmoving party's case. Celotex, at 325. "The burden on the moving party may be discharged by 'showing' – that is, pointing out to the (Court) – that there is an absence of evidence to support the non-moving party's case." Id. Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must proffer specific facts showing that a genuine issue exists for trial. Matsushita, 475 U.S. at 586. The party opposing summary judgment must go beyond the pleadings, and by affidavits, depositions, answers to interrogatories or admissions set forth "specific facts showing that there is a genuine issue for trial." RCFC 56(e); Celotex, 477 U.S. at 324. Here, summary judgment is appropriate because the operative facts (Mr. Thomas's and others' communications to some of the TSPs) are not in dispute and the determinative issues (there is no actual contract provision to enforce and the communications relied upon do not change the terms of the Government's solicitation – primarily due to a lack of contractual authority by those who indicated post-October 2005 reimbursement) is ripe for adjudication by the Court.

II. There Is No Contract For Powertrack Reimbursement

Stevens alleges that it is contractually entitled to reimbursement of the Powertrack fee for two reasons. First, Stevens argues that the requirement to use Powertrack for billing constitutes a "contract" to reimburse the Powertrack fee. Pl. Mot. 12. Second, Stevens argues that the statements made by Mr. Thomas and others that SDDC would continue to reimburse the Powertrack fee until Families First system became effective are contractually enforceable. Complaint ¶ 33; Pl. Mot. 2-4. Both of Stevens's arguments are quickly refuted so our cross motion for summary judgment should be granted.

First, it is undisputed that no express contractual language provides for reimbursement of the Powertrack fee. This, in and of itself, is dispositive of Stevens's claim inasmuch as there simply is no contract for this Court to enforce. "The party alleging a contract must show a mutual intent to contract including an offer, an acceptance, and consideration." Trauma Service Group v. United States, 104 F.3d 1321, 1325 (Fed. Cir. 1997) (citing City of El Centro v. United States, 922 F.2d 816, 820 (Fed. Cir. 1990). Despite the lack of a contract to enforce, Stevens's argues that the use of the Powertrack system, by definition, bound the Government to reimburse TSPs for the Powertrack fee. Stevens even attempts to cobble together an "offer," "acceptance," and "consideration" for this "contract"

out of actions that are clearly not an offer (the requirement to use Powertrack), acceptance (using Powertrack), or consideration (a non-existent "commitment" to reimburse the Powertrack fee). Pl. Mot. 12. In fact, Stevens's "mutual intent" argument is not just unsupported, it is directly contradicted by the Federal Register statement that was published by the Government in February 2005. That statement was entitled "Mandatory Use of US Bank's Power Track System by Department of Defense Personal Property Transportation Service Providers (TSPs)." 70 Fed. Reg. 5616; Pl. App. 70-71. The Federal Register notice states in pertinent part:

> It is important to note that during this period, the participating TSPs will continue to receive the 1% PowerTrack Surcharge reimbursement fee **until** International Winter 05 (IW05) and Domestic Winter 05 (DW05) **or** Defense Future Personal Property (DPS) Rates are in effect. The Rate Solicitation for both IW05 and DW05 will be available to TSPs on March 15, 2005 and the rate filing period is scheduled for May 1, 2005 to July 15, 2005 with an effective date of October 1, 2005 for both cycles. For this reason, TSPs should file their rates for the IW05 and DW05 Winter Cycle and DPS assuming that PowerTrack and CWA will be used. DPS rates will be filed August 1-31, 2005 with an effective date of October 1, 2005.

(Emphasis supplied). Thus, TSPs were clearly notified that the Powertrack reimbursement was temporary, and would cease when "winter rates" were effective in October 2005 or when the Families First/DPS system began. As it turns out, it was the

initiation of winter rates in October 2005 that triggered the end of the Powertrack reimbursement.

With an utter lack of contractual right to Powertrack reimbursement, and with express published notice that the reimbursement would end in October 2005, Stevens's argument that there was, in fact, a "contract" for Powertrack reimbursement beyond October 2005 is without merit.

III. The Government Did Not Modify The Contract

Unable to rely upon any contract provision for Powertrack reimbursement past October 2005, Stevens attempts to rely upon the statements made primarily by Mr. Thomas to the effect that Powertrack reimbursement would continue until the Families First system was in place, Pl. Mot. 13-17, which is directly contrary to the Federal Register notice that Powertrack reimbursement would cease in October 2005 whether Families First was implemented or not. Pl. App. 70-71. Although Mr. Thomas's statements were not ill-motivated (he was uncertain when Families First would be implemented, then believed it would be in February 2006 and there was some confusion on both Mr. Thomas's and Stevens's parts regarding Powertrack reimbursement (Thomas Declaration ¶¶ 5, 6; Pl. App. 31, 57, 59, 66)), we do not dispute that Mr. Thomas's statements were inaccurate. In fact, the contradictory nature of Mr. Thomas's statements further demonstrates our point. Although the fact that Mr. Thomas lacked

the authority to contractually bind the Government may or may not have been obvious to Stevens, the statements upon which Stevens relies were clearly contrary to the Federal Register notice.[4] Faced with conflicting information between Mr. Thomas and the Federal Register, any TSP who was confused could have, and should have, inquired further. Put another way, unless and until the Federal Register notice was retracted or superceded in a formal and published fashion, the TSPs could not have reasonably relied upon Mr. Thomas's ad hoc advice.

In addition, even if the TSPs were not unreasonable in relying upon Mr. Thomas's statements in spite of the Federal Register notice to the contrary, the fact remains that Mr. Thomas could not modify the terms of the solicitation (to provide for Powertrack reimbursement) under any circumstances because he lacked the authority to contractually bind the Government. Thomas Declaration ¶¶ 1-3. Contractors can rely only upon Government officials who have actual authority to bind the government. Brunner v. United States, 2006 U.S. Claims LEXIS 117 at *7 (Fed. Cl. May 2, 2006). The burden is upon the TSPs to

[4] Actually, the information provided by Mr. Thomas was, itself, internally contradictory. In some instances he indicated that Powertrack reimbursements would continue until the Families First program was in place (Pl. App. 31, 57, 59, 66), but he also correctly advised the TSPs, in both his email dated August 10, 2005, and in the FAQ posted on the SDDC website, that TSPs must include the Powertrack fee in the rates that would take effect in October 2005. Pl. App. 31, 68.

determine with whom they are dealing and whether that person has authority to contract. Dureiko v. Southern Pine Isle Corp., 62 Fed. Cl. 340, 352-53 (2004) ("[P]laintiffs have the burden to demonstrate the existence of the Government official's authority to contract."). In this case, although Stevens argues that Mr. Thomas's position as the point of contact for Powertrack conferred implied authority upon him, Pl. Mot. 13-17, Stevens cannot dispute that the only authority truly "implied" by Mr. Thomas's position was to "brief[] TSPs on Powertrack matters," Pl. Mot. 17, and to respond to questions, which is markedly different from the authority to contract or to change the reimbursement structure.

Contrary to Stevens's argument, however, although a Government employee may have implied authority to contract based upon his/her duties and whether the power to contract is appropriate or essential to the performance of those duties, Brunner at * 64, Mr. Thomas's duty description shows that the power to contract was neither appropriate nor essential to the performance of his duties. Thomas Declaration, Attachment B (attached). Instead, Mr. Thomas is a Traffic Management Specialist who is primarily responsible for the professional, technical and administrative work in management and procurement of moving services. There is nothing in his duty description to indicate that the authority to enter into contracts with TSPs is

a necessary part of the performance of his duties. Thomas Declaration, Attachment B (attached).

IV. Stevens Is Not Entitled To A Quantum Meruit Recovery

Finally, Stevens argues in the alternative that the Government's October 2005 contract modification, requiring all TSPs to use Powertrack for billing and payment, was a request for performance of services not contained in the solicitation. Pl. Mot. 22. Relying upon an analogy to other transportation cases where TSPs were awarded quantum meruit recoveries for contract changes, Stevens claims that using Powertrack was akin to transporting goods an extra and unanticipated distance. Id. The problem with Stevens's quantum meruit argument, however, is that the use of Powertrack was not an unanticipated change to the contract. The Federal Register notice, published in February 2005, well in advance of the TSPs formulation of the October 2005 rates, was entitled "Mandatory Use of US Bank's Power Track System by Department of Defense Personal Property Transportation Service Providers (TSPs)," Pl. App. 70-71 (emphasis supplied), and contained several requirements for mandatory use of Powertrack, in many instances even prior to October 2005. Pl. Mot. 70. Because there was, in actuality, no unanticipated change imposed upon Stevens by the October 2005 contract modification, no quantum meruit recovery is available.

## CONCLUSION

For the reasons stated above, defendant respectfully requests this Court to deny plaintiffs' motion for summary judgment and to grant our cross motion for summary judgment.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Bryant G. Snee
BRYANT G. SNEE
Assistant Director

s/Brian S. Smith
BRIAN S. SMITH
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D. C. 20530
Tele: (202) 616-0391
Fax: (202) 353-7988

Attorneys for Defendant

June 12, 2006