IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| STEVENS VAN LINES, INC., ET AL., | ) |
| Plaintiff, | ) |
| v. | ) No. 05-1278C (Judge Smith) |
| THE UNITED STATES, | ) |
| Defendant. | ) |

DEFENDANT'S RESPONSE TO PLAINTIFF'S PROPOSED FINDINGS OF UNCONTROVERTED FACT

Pursuant to RUSCFC 56.1(B)(2), defendant respectfully submits the following response to Plaintiff's proposed findings of fact.

1. All plaintiffs are Transportation Service Providers (TSPs) which participate in the Department of Defense (DoD) domestic and/or international procurements for the transportation of personal property i.e. household goods and unaccompanied baggage, of military service members and their families. (Complaint, ¶ 12). The procurement is administered by the Surface Deployment and Distribution Command ("SDDC"), which agency is designated by DoD as its sole manager for domestic and international personal property procurements. (Complaint, ¶ 14).

Response: Agree.

2. SDDC solicits qualified TSPs twice yearly to submit rates to provide service in its respective international and domestic procurements, which rates are fixed and remain in effect for the duration of each six-month procurement cycle unless cancelled. The rate filing process involves two steps, first, the Initial Filing (I/F) cycle in which the low rate level is established and, second, the Me-Too (M/T) cycle in which the participating carriers submit their final rates at which they agree to service shipments awarded them during the procurement cycle (Head Declaration, p. 1; Harrison Declaration, p. 1) (App. 1, 15).

Response: Agree with the first sentence. Agree with the second sentence except to note that the domestic program has

several cycles after the M/T where carriers can enter the program or cancel rates. Jack Declaration at 3. The international program has cancellation cycles. Id. at 5. The M/T cycle is an opportunity for TSPs to adjust their rates downward to equal the lower rates of other TSPs established during the initial filing cycle. Id. at 6. TSPs can match another TSP's lower rate. Id. at 7.

3. SDDC has announced that it is changing its Personal Property Program to a procurement known as Families First. This procurement is presently in Phase I. Phase I involves the institution of a computerized billing and payment system known as PowerTrack which is administered by U.S. Bank, for which services U.S. Bank presently charges TSPs a fee of 1.1 percent (increased in October 2005 from 1 percent) of the total billed by each TSP for all services performed, including accessorial services. Phase II of Families First or DPS, was originally scheduled to become effective on October 1, 2005, was later postponed to February 1, 2006 and subsequently was indefinitely postponed. Phase II involves a complete reordering of the current military household goods program substituting "best value" as the basis for shipment award, rather than cost. (Head Declaration, pp. 2-3; Harrison Declaration, pp. 1-3) (App. 2-3, 15-17).

Response: Agree.

4. On March 29, 2004, SDDC instituted a test of the PowerTrack system in the then current Personal Property Program and SDDC requested TSPs to participate voluntarily in billing by PowerTrack and agreed to reimburse TSPs for the PowerTrack fee. (Head Declaration, p. 2; Harrison Declaration, p. 2; Michael Declaration, p. 1) (App. 2, 16,22).

Response: Agree.

5. On February 3, 2005, by notice published in the Federal Register, (70 F. R. 5616-5617) (App. 70-71). SDDC made participation in PowerTrack mandatory for all TSPs. In the Federal Register Notice, SDDC stated that TSPs would be reimbursed for the PowerTrack fee ''until International Winter 05 (IW05) and Domestic Winter (DW05) or Defense Future Personal Property (DPS) rates are in effect." (App.71). At the time of

issuance of this Federal Register Notice, IWOS, DW05 and DPS rates had the same effective date, viz., October 1, 2005. (Michael Declaration, p. 2) (App. 23) and it was contemplated by both SDDC and TSPs that the IW05 rates and DW05 rates were to serve solely as back- ups and would apply only if the Families First procurement was terminated after it went into effect. (Michael Declaration, p. 2) (App 23).

Response: Agree.

6. On or about May 9, 2005, SDDC issued its international solicitation IW05 covering the period October 1, 2005 through March 31, 2006, which provided initial rates were to be filed no later than May 18, 2005 and that final me-too rates were to be filed no later than Ju1y 28, 2005. (Head Declaration, pp" 1-2) (App. 1-2). The IW05 solicitation did not provide for billing by PowerTrack. (Head Declaration, p. 2, Att. lA) (App. 2, 5). The solicitation prescribed fixed charges for the accessorial services set forth in the solicitation. (Groger Declaration~ p. 2) (App. 36).

Response: Agree with the first sentence of paragraph 6. Disagree with the second sentence. On May 4, 2005, TSPs were notified of the requirement to bill by PowerTrack. Pl. App. 70-71. This notification appeared in the Summary of Changes and Appendix 5G to the international solicitation. Pl. App. 5. This notification was further clarified in Change 2 to IW05 on October 3, 2005. Pl. App. 6.

7. On or about May 15 2005 SDDC issued its domestic rate solicitation for DW05 covering the period November 1, 2005 through Apri1 30, 2006, which provided that initial rates were to be filed no later than May 23, 2005, and that final me-too rates were to be filed no later than August 26, 2005. (Harrison Declaration, pp. 1-2) (App. 15-16). The DW05 solicitation placed a cap on the maximum rate level a TSP could file and prescribed fixed charges for various accessorial services. (Harrison Declaration, p.3; Michael Declaration~ p. 5; Wilken Declaration p. 1) (App. 17, 26, 39). The DW05 solicitation did not provide for billing by PowerTrack until Change 3, November 30, 2005, (Wilken Declaration, p. 3) (App. 41).

Response: Agree with the first two sentences of paragraph 7. Disagree with the last sentence of paragraph 7. Appendix 3B to Chapter 3 of the Domestic Rate Solicitation, issued on May 11, 2005, provided guidance that PowerTrack was to be used for electronic funds transfer. Pl. App. 10. Appendix 3A to Chapter 3, Billing Procedures/Instructions states that TSPs agree to submit invoices to U.S. Bank PowerTrack for payment. Pl. App. 23. Appendix 3A was also issued on May 11, 2005. Id. Both of these appendices were clarified in November 2005. These documents were available prior to submission of initial rates.

8. On June 22, 2005, prior to the final me-too rate filings for IW05 and DW05, SDDC postponed until February 1, 2006, the effective date of the DPS rates and the institution of Phase II of the Families First procurement. (White Declaration p. 2) (App. 53).

Response: Agree.

9. During Phase I, SDDC held meetings and conference calls with TSPs and representatives of their industry trade associations, viz. the Household Goods Forwarders Association of America, Inc. (HHGF AA) and the American Moving & Storage Association (AMSA), at which Families First and PowerTrack were principal topics. At a Business Progress Working Group Meeting on January 5, 2005, SDDC's former Chief of Personal Property, Tom Hicks and SDDC's designated representative, George Thomas, advised that SDDC would continue to reimburse TSPs for the PowerTrack fee until Phase II of Families First. (Head Declaration, p. 3; White Declaration, p. 2) (App. 3, 52). During the succeeding meetings and conference calls, SDDC's advice was that TSPs would continue to be reimbursed for the PowerTrack fee until Phase II of Families First (DPS) became effective. (Head Declaration, pp. 2-3; Wilken Declaration, pp. 3-5; White Declaration, pp. 4-5; Day Declaration, p. 3). (App. 23, 41-43, 54-55, 62). George, Thomas was designated by SDDC as the official responsible for advising TSPs on matters relating to PowerTrack (Federal Register Notice, 70 F.R. 5617, February 3, 2005) (App. 71). Mr. Thomas advised TSPs to direct all inquiries on

PowerTrack matters to him. (Michael Declaration, p. 4) (App 25).

Response: Agree that SDDC discussed the Families First Program and PowerTrack on various occasions with TSPs and industry trade representatives. Defendant can neither agree nor disagree with plaintiffs' characterization of the January 5, 2005 meeting allegedly attended by Mr. Thomas and Mr. Hicks. Agree with the remainder of paragraph 9, except disagree with the characterization of George Thomas as SDDC's designated representative. Mr. Thomas is the action officer and, as such, he does not have authority to make final decisions regarding reimbursement of the PowerTrack fee. Thomas Declaration 5.

10. Scott Michael, Vice President - Government Traffic of AMSA learned in early June 2005 that Phase II of Families First might be postponed. By e-mail, June 7, 2005, he asked Steven Savage, an official of IBM, the SDDC contractor administering PowerTrack, for clarification as to whether the PowerTrack fee was to continue to be reimbursed during Phase I, stating:

"Attached is the list of changes in the Rate Solicitation for the current program, effective October I [2005] [otherwise known as the back up in case Families First is postponed]. I don't see any indication that the 1% PowerTrack fee will no longer be covered by the Government. . We had been led to believe that this fee was tied to Phase I, and thus would be covered so long as we're in Phase I." (Michael Declaration, p. 3, Att. 1) (App. 24, 29).

Steven Savage responded by e-mail dated, June 8, 2005:

"I stand corrected, I checked and as I understand it now you are correct, the 1% fee will coincide with Phase II." (Michael Declaration, p. 3, Att. 1) (App. 24, 29).

<u>Response</u>: Defendant can neither agree nor disagree with the first sentence of paragraph 10. Defendant has no knowledge of what Scott Michael learned or when he learned it. Agree that Mr. Michael and Steven Savage exchanged email messages, however, Mr. Savage does not have authority to make decisions for SDDC nor otherwise bind SDDC in a contract. Pl. App. 70.

11. After Phase II was postponed on June 22, 2005, Charles White of HHGFAA by e-mail, June 30, 2005, requested that George Thomas, SDDC's designated representative on PowerTrack, confirm that SDDC was going to continue reimbursement of the PowerTrack fee:

"Now that Families First has been delayed I've had a number of inquiries from our membership concerning the 1% PowerTrack fee. Will it continue to be a pass though charge during the next rate cycle (IW05)? It is unclear to me after reading the 1-16 [IW05] solicitation as to whether it will continue. I'm not sure that this was even envisioned since the solicitation was written well before a delay had been mentioned." (White Declaration, pp. 2-3, Att. 1) (App. 53-54, 56).

Mr. Thomas responded by e-mail, June 20, 2004:

"I am at an offsite today and tomorrow, was fortunate to access my e-mail. Yes, the 1% will continue as a pass through until DPS comes on line, ever how long it takes. "You are by far, not my worst nightmare. Would love for industry to understand that we do work (hard) toward resolving their issues, timely. When raised, they don't go into a black hole, we do take action as you can attest." (White Declaration, Att. 2) (App. 57).

<u>Response</u>: Agree, except that it appears from the attachment at p. 57 of Plaintiff's Appendix that Mr. Thomas' email was sent on June 30, 2005.

12. By e-mail, August 9, 2005, Scott Michael requested George Thomas to confirm Mr. Savage's advice in his e-mail of June

8,2005:

"Can you please confirm that Steve's information is correct?" (Michael Declaration, *Att.* 2) (App. 30).

George Thomas replied to Mr. Michael by e-mail, dated August 10, 2004:

"Just returned from Business Travel and am just now receiving youre-mail. Don't know how many times I will have to answer this question but here goes.

"The TSP 1 % reimbursement fee will continue for all TSPs participating in Phase I until DPS rolls out in Feb. 06. PIs [please] note that all TSPs must factor this into their rates for DPS so when it does roll out, they will receive compensation.

"However for now and during the remaining time of Phase I, they willbill the 1% fee the same way they are now. Billing for the 1% fee will cease when DPS rolls out.

'Hopefully, this answers your question." (Michael Declaration, Att. 3) (App. 31).

<u>Response</u>: Agree, except that the George Thomas email was dated August 10, 2005. Pl. App. 31.

13. Another inquiry to Mr. Thomas was made by Sue Fuchtman of The Day Companies, a billing and audit service provider for many TSPs, by e-mail, dated July 29, 2005:

"Subject: 1 % powertrack fee. Is that [the PowerTrack fee] still a billable charge to the government as of 11-1-05. I am seeing an e-mail flying around saying no longer."

Mr. Thomas responded Ms. Fuchtman by e-mail, July 29, 2005:

"As discussed, TSPs have to incorporate the 1 % into their rates when they file them in DPS on 1 Nov. 05. The government will continue to pay the 1% until DPS rolls out." (Day Declaration, p. 2, Att. 1, 2) (App. 62, 66).

Response: Agree.

14. The Day Companies furnished George Thomas's advice to Sue Fuchtman to the many TSPs for whom it performed PowerTrack billings, by notice in the July 29,2005 Web posting of its XRS News, which stated:

"1 % PowerTrack Fee

"We have had some questions from customers about the 1 % PowerTrack fee, and when it will no longer be billable back to government. We have confirmed with SDDC that .the government will continue to pay the 1 % fee until DPS rolls out, currently scheduled for February 2006." (Day Declaration, p. 2, Att. 2) (App 62, 67).

Response: Defendant can neither agree nor disagree with paragraph 14. Defendant has no knowledge of correspondence between the industry trade representatives and TSPs.

15. On August 12, 2005, Charles White sent the following e-mail to George Thomas:

"Since your e-mail exchange with Scott on the 1% fee I have had members coming out of the woodwork asking me this same question about the 1% fee. I guess word gets out around our industry in a hurry but it's not always the correct word! I thought, as you did, that this had been clarified months ago.

"Would it be possible to put this up as an F AQ [Frequently Asked Question]? That way I could refer my members to the SDDC for an 'official' answer. If the answer would just say that the billing for the 1 % fee has been extended until the beginning of Phase II in February it would be perfect! I know when the RFO [Request for Offers] comes out I will be hammered with this question once again.

"Any help you can offer would be helpful. THANKS!!!" (White Declaration, Att. 4) App 59).

George Thomas replied by e-mail, August 12, 2005:

"By putting up this as a F AQ, it still will not resolve the issue. Been that route many times but will honor your request.

"Steve and Charlie, please capture the TSP 1 % Fee as a FA Q and post to the SDDC web site for me." (White Declaration, Att. 4). (App.59).

Response: Agree.

16. On August 17, 2005, SDDC made the following posting on its Web site:

"How long will the government reimburse the Carriers 1% PowerTrack fee?

"The TSP 1 % reimbursement will continue for all TSPs participating in Phase I until DPS rolls out in February 2006. Please note that all TSPs must factor this into their rates for DPS so that when it does roll out, they will receive compensation. However for now and during the remaining time of Phase 1, they will bill the 1% fee the same way they are now. Reimbursement for the 1 % will cease when DPS rolls out." (White Declaration, .p. 3, Att. 5) (App. 54, 60).

Response: Agree that the language in paragraph 16 was posted to the SDDC website. Defendant can neither agree nor disagree as to the date of the posting, but it was apparently posted in August 2005.

17. Margaret (Peggy) Wilken of plaintiff Steven Van Lines transmitted the SDDC Web site posting with guidance on PowerTrack bye-mail, August 26, 2005, with the following message:

"This link documents the fact that SDDC will reimburse us for the PowerTrack fee until Phase IT of Families First is implemented. Please make sure we keep a copy of this somewhere in case this is ever disputed. (Wilken Declaration, p. 2, Att. No.1) (App. 40, 44).

Response: Defendant can neither agree nor disagree with paragraph 17. Defendant has no knowledge of any communications among employees of plaintiff Stevens Van Lines.

18. SDDC's fonner Deputy Chief of Staff for Passenger and Personal Property, Colonel Thomas Keller advised Joseph Harrison, President of AMSA by letter dated January 24,2005 that "[u]ntil all sites and all TSPs are participating it would not be cost effective for the [PowerTrack] charges to be included [in] the transportation rate. (Harrison Declaration, p.3, Att. 1) (App 17, 20).

Response: Agree that Colonel Keller wrote a letter to Mr. Harrison dated January 24, 2005. Disagree with plaintiffs' characterization of the letter. The letter is the best evidence of its contents.

19. The rates for IW05 and DW05 apply to. all shipments, whether or not the billing is by PowerTrack {Michael Declaration, p.6; Groger Declaration p. 2; Wilken Declaration, pp. 3-4) (App 27, 36,41-42). At the time the solicitations for IW05 and DW05 issued, 28 military bases of the Army, Navy and Marine Corps were not participating in PowerTrack (Groger Declaration, p. 2, Att. 1; Wilken Declaration, Att. 2; Day Declaration, p. 4) (App 36, 38, 49, 63). Also no Air Force bases have ever participated in PowerTrack. (Michael Declaration, p. 6; Wilken Declaration, pp. 3-4; Day Declaration, p. 4) (App 27, 41-42, 64). Billing by PowerTrack may be accomplished only when both the origin and destination military installations participate in PowerTrack. (Michael Declaration, p. 5) (App 26). Rates cannot be varied by military service. The same rates apply to all military services. (Wilken Declaration, p. 3) (App. 41).

Response: Agree with the first sentence of paragraph 19. Defendant can neither agree nor disagree with the number of bases not participating in PowerTrack as referenced in the second and

third sentence of paragraph 19. Agree with the remainder of paragraph 19.

20. TSPs were prevented from increasing their bids to cover the PowerTrack fee by the terms of both the DW05 and IW05 solicitations. The DW05 solicitation placed a limit on the maximum rate level a TSP could file and also provided fixed charges, which could not be increased, for many accessorial services. (Harrison Declaration, pp. 3-4; Michael Declaration, p. 5; Wilken Declaration, p. 4) (App. 17-18, 26,43). The IW05 solicitation provided fixed charges for all accessorial services contained in the solicitation. (Groger Declaration, p. 2) (App. 36).

Response: Disagree. When TSPs submit their rates, SDDC does not specify how much they can increase the rates as compared to the last season's rates. TSPs are required to perform their analysis prior to rate submission to establish the new rate prior to rate submission. The solicitation for IW05 or DW05 do not prevent TSPs from increasing rates from their prior season's rate.

21. The Day Companies, which bills for 369 TSPs and has submitted approximately 76,371 billings by PowerTrack has found that billing by the PowerTrack system is more time-consuming and requires more, work on its part to obtain payments. The Day Companies has had to increase the charges to TSP customers by 38 percent for domestic invoices and 47 percent for international invoices for PowerTrack billings as compared to its charges for non-PowerTrack billings. (Day Declaration, pp. 1, 4, 5) (App. 61, 64, 65).

Response: Defendant can neither agree nor disagree. Defendant has no knowledge of the rates that the Day Companies charge TSPs for any services, including PowerTrack.

22. On October 3, 2005, SDDC retroactive to October 1, 2005, amended international solicitation IW05 to require TSPs to bill by PowerTrack. (Head Declaration, p. 2, Att. IB) (App. 2, 6).

<u>Response</u>: Disagree. On May 4, 2005, TSPs were notified of the requirement to bill by PowerTrack. This notification appeared in the Summary of Changes and Appendix 5G. To the international solicitation. This notification was further clarified in Change 2 to IW05 on October 3, 2005.

23. The DW05 solicitation required TSPs to furnish paper documents to support their billings which is a requirement for billing under the current program but is not required for billing by PowerTrack. (Michael Declaration, p. 6, Att. 5) (App. 27, 34). Further, Change 3 to DW05, which required the PowerTrack billings, was not created by SDDC until November 30, 2005; three months after the final rates for DW05 were filed. (Wilken Declaration, p. 3, Att. 2) (App. 41, 47-48).

<u>Response</u>: Disagree. The change made in November 2005 provided further clarification that paper documentation would have to be provided along with PowerTrack billings as applicable.

24. On October 20, 2005, SDDC held two meetings with representatives of TSPs where its representatives gave conflicting advice as to whether SDDC would reimburse the PowerTrack fee during IW05 and DW05. At a training session attended by Brandon Day of the Day Companies and representatives of at least 60 TSPs, Rosia Lindsay of SDDC advised that TSPs would continue to be reimbursed until the roll-out of Phase II. (Day Declaration, p. 3) (App. 63). On the same day, Charles White, HHGFAA Director of Government & Military Relations, attended a meeting at which SDDC advised the attendees that the PowerTrack fee would not be reimbursed for IW05 and DW05. (White Declaration, pp. 3-4) (App. 54-55).

Response: Defendant can neither agree nor disagree. Defendant contends that statements by Ms. Lindsay are not relevant to the plaintiffs' claims that a contract was entered into by SDDC through the representations of George Thomas.

25. By e-mail, dated October 31, 2005, SDDC advised all TSPs "... that effective with the International Winter 05 (IW05) and Domestic Winter (DW05) rate cycles the 1 % PowerTrack Surcharge fee is no longer reimbursable." By e-mail dated November 10, 2005, Colonel Steven L. Amato, the SDDC official responsible for the personal property procurements, affirmed that the PowerTrack fee would not be reimbursed to TSPs for billings for services performed during IW05 and DW05. (Head Declaration, p. 4, Att. 2, 4) (App. 4, 7, 13, 14).

Response: Agree.

26. The Day Companies advised their TSP clients for whom they made PowerTrack billings that SDDC' s had reversed it decision and had decided not to reimburse the PowerTrack fee in its XRS newsletter for the fourth quarter 2005, stating:

"When Phase II was delayed, and rate filing for the IW IDW05 was ongoing, we contacted SDDC and asked them for clarification on whether or not the reimbursement of the PowerTrack fee would continue. We were told defmitively, and in writing, that the reimbursement would continue until Phase II of Families First started. We passed that information to our clients, who filed rates accordingly. Now SDDC has reversed its decision, when it is too late for TSPs to take the PowerTrack fee into consideration for the IWIDW05 rates." (Day Declaration, p. 3, Att. 4) (App. 63, 69).

Response: Defendant can neither agree nor disagree. Defendant has no knowledge of the advice that the Day Companies provided to their TSP clients. Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Bryant G. Snee
BRYANT G. SNEE
Assistant Director

s/Brian S. Smith
BRIAN S. SMITH
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D. C. 20530
Tele: (202) 616-0391
Fax: (202) 353-7988

Attorneys for Defendant

June 12, 2006