IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| STEVENS VAN LINES, INC., ET AL., | |
| Plaintiff, | |
| v. | No. 05-1278C (Senior Judge Smith) |
| THE UNITED STATES, | |
| Defendant. | |

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

Plaintiff ("Stevens") filed a motion for summary judgment seeking reimbursement for a 1-percent fee that Stevens paid between October 2005 and approximately April 2006 to have its payments under a series of shipping contracts processed electronically.[1] Complaint 12.[2] In our cross-motion, we demonstrated that there is no legal basis for Stevens to recover the 1-percent fee because there is no contract, or contract provision, that entitles Stevens to reimbursement and because Stevens was explicitly notified that the temporary reimbursement (which was never a contract obligation) would be discontinued.

---

[1] Because Stevens's motion for summary judgment did not address damages, or other factual matters related to entitlement discussed below, it is more correctly styled as a motion for partial summary judgment.

[2] Plaintiff's complaint is cited as "Complaint #." Stevens's motion for summary judgment is cited as "SMSJ #." The appendix attached to Stevens's motion for summary judgment is cited as "SMSJ App. #." Our cross-motion for summary judgment is cited as "XMSJ #." Stevens's opposition to our cross motion for summary judgment is cited as "S. Opp. #." The appendix attached to this reply brief is "Reply App. #."

Stevens opposed our motion, raising several new arguments not raised in its original motion for summary judgment – but still identifying no legitimate legal basis for recovery of the 1-percent fee. We reply as follows and for the reasons below and those set forth in our cross-motion for summary judgment, we respectfully request the Court deny Stevens's motion for summary judgment and enter judgment in our favor instead.

INTRODUCTION

Stevens's complaint sought recovery of a 1-percent fee that is collected by the financial institution (U.S. Bank) that processes Stevens's and all other transportation service providers's ("TSP's") payment requests for the shipment of property owned by military personnel. Complaint 12. The complaint contains four counts, three of which (counts II, III, and IV) allege entitlement under a quantum meruit theory, which, by definition, is not based upon the terms of a contract. Complaint ¶¶ 37, 40, 44. In addition, count I alleges that the Government "breached its agreement with plaintiffs" but count I does not clearly identify any contract that was purportedly breached. Complaint ¶ 33.

In its motion for summary judgment, Stevens reasserted its quantum meruit arguments (SMSJ 19-23) and also suggested that "[t]he TSP's right to compensation for billing by PowerTrack is founded on their contract with SDDC," again without identifying

the "contract," but instead suggesting without support that ". . . a binding contract, either express or implied-in-fact, was formed by SDDC's imposition of the PowerTrack billing requirement, the TSPs' compliance with that requirement, and SDDC's agreement that TSPs are entitled to compensation for billing by PowerTrack." SMSJ 12. In sum, Stevens's case is not based upon the express terms of any written contract identified by Stevens[3] and, instead, relies upon an "implied contract" that does not, in fact, exist either

ARGUMENT

I. Stevens Is Not Entitled To A *Quantum Meruit* Recovery

In our cross motion for summary judgment, we argued that a quantum meruit recovery is unavailable to Stevens because the requirement to use PowerTrack was not an unanticipated aspect of Stevens's contract performance – particularly given the fact that

---

[3] As described in great length previously, the "express contract" upon which count I is based consists only of "advices" provided by Government personnel (primarily George Thomas) in several emails and a web-site posting. Complaint ¶ 22, 24, S. Opp. 3. Needless to say, these unilateral statements, made to discrete recipients (emails) or the general public (web-site) are not "express contracts" either with the recipients of those communications, every member of Stevens's group or, of course, with the general public. Trauma Service Group v. United States, 104 F.3d 1321, 1325 (Fed. Cir. 1997) (citing City of El Centro v. United States, 922 F.2d 816, 820 (Fed. Cir. 1990)). Although Stevens refers to the solicitations and tenders of service that are used to form the actual contract between the parties, Stevens fails to squarely acknowledge that they contain no provision whatsoever for the reimbursement of PowerTrack fees, precluding any finding of an "express" contract. SMSJ App. 5-6, 32.

the "advices" upon which Stevens relies were not made until after Stevens's shipping rates had been prepared and submitted to the Government. XMSJ 12; SMSJ App. 31, 57, 59, 66. Stevens's opposition devotes only one page (of Stevens's 28-page brief) responding to our quantum meruit defense without citation to any authority. S. Opp. 27-28. Stevens only quibbles with our use of the words "unanticipated change" to describe a necessary criteria for a quantum meruit claim when Stevens used the words "additional service" instead. This is a meaningless distinction because Stevens's use of PowerTrack for billing can hardly be called an "additional service" provided to the Government.

Moreover, although Stevens cited three out-of-date cases[4] in its motion for summary judgment where the contractor was required to perform truly additional services (shipping goods over an additional, unanticipated, distance) those cases do not apply here because no such additional service was required of Stevens.

---

[4] Trans Ocean VAn Service v. United States, 426 F.2d 329, 348 (Ct. Cl. 1970); Allstates Van Lines Corp. v. United States, 215 Ct. Cl. 1075 (1978); American Ensign Van Service v. United States, 220 Ct. Cl. 681 (1979). These cases are out of date because they made quantum meruit awards prior to the evolution of the new standard for quantum meruit – that this Court has jurisdiction to award a quantum meruit recovery only as a very limited exception to the rule that this Court does not possess jurisdiction over claims based upon contracts that are implied-in-law. International Data Products Corp. v. United States 70 Fed. Cl. 387 (2006).

In any event, more contemporary quantum meruit authority reveals that Stevens cannot prevail anyway. This Court's recent discussion of quantum meruit in International Data Products Corp. v. United States 70 Fed. Cl. 387 (2006), is instructive:

> At common law, quantum meruit referred to quasi-contractual recovery for the value of services rendered. Fluor Enters., Inc. v. United States, 64 Fed. Cl. 461, 495 n. 31 (2005) (citing Urban Data Sys., Inc. v. United States, 699 F.2d 1147, 1154 n. 8 (Fed. Cir. 1983)). Its modern incarnation has been said to proceed on the theory "that if one party to a transaction provides goods or services to the other party that the parties intended would be paid for, but the recipient refuses to pay for them, the law will imply a contract for the recipient to pay the fair value of what it has received." Perri v. United States, 340 F.3d 1337, 1343 (Fed. Cir. 2003); see also United States v. Amdahl Corp., 786 F.2d 387, 393 (Fed. Cir. 1986). Recovery in quantum meruit is based upon a contract implied in law. Perri, 340 F.3d at 1343 (citing Fincke v. United States, 230 Ct.Cl. 233, 246, 675 F.2d 289, 296 (1982)). A contract implied in law is one in which there is no actual agreement between the parties, but the law imposes a duty in order to prevent injustice. Algonac Mfg. Co. v. United States, 192 Ct.Cl. 649, 673-74, 428 F.2d 1241, 1255-56 (1970), Mega Construction Co., Inc. v. United States, 29 Fed. Cl. 396, 470 (1993). The Court of Federal Claims lacks jurisdiction over contracts implied in law. 28 U.S.C. §1491(a)(1)(2000); Hercules, 516 U.S. at 423-24, 116 S.Ct. 981; Trauma Service Group, 104 F.3d at 1324; D.V. Gonzalez Elec. & Gen. Contrs., Inc. v. United States, 55 Fed. Cl. 447, 459-60 (2003). An exception arises in situations where a plaintiff provides goods or services to the Government pursuant to an express contract and the Government refuses to pay for them because of defects in the contract that rendered it invalid or unenforceable. Perri, 340 F.3d at 1343-44; Dureiko v. United States, 62 Fed. Cl. 340, 358-59 (2004). In such a circumstance, it would be unfair to permit the Government to retain the benefits of the bargain that it had made with plaintiff without paying for them. Therefore, the Court of Federal Claims has used quantum

meruit as a basis for awarding the plaintiff the fair value of what it supplied to the Government. Perri, 340 F.3d at 1344. In United States v. Amdahl Corp., the Court of Appeals for the Federal Circuit explained:

> Where a benefit has been conferred by the contractor on the government in the form of goods or services, which it accepted, a contractor may recover at least on a quantum valebant or quantum meruit basis for the value of the conforming goods or services received by the government prior to the rescission of the contract for invalidity. The contractor is not compensated under the contract, but rather under an implied-in-fact contract.

Clearly, this case does not fit within the narrow exception described in International Data – providing a quantum meruit recovery only when an express contract has been performed but is later "invalidated." It is little wonder that Stevens pays little attention in its opposition brief to its own quantum meruit claims, given the clarity of this Court's lack of jurisdiction over them.

In addition to the plain lack of jurisdiction over Steven's quantum meruit claim, Stevens's entire case hinges upon the (virtually unsupported, and certainly not uncontroverted) allegation that all of the plaintiffs relied upon the post-rate-filing "advices" concerning continued 1-percent reimbursement after October 2005 and "did not include the one percent PowerTrack fee in [their] rates." Complaint ¶ 6. Clearly, this is an essential factual predicate to a recovery under any theory.

If, rather than relying upon the ad-hoc and conflicting advice received after submitting their initial shipping rates to specifically lower their rates downward on account of the anticipated 1-percent reimbursement, the TSPs instead heeded the notice in the Federal Register, accounted for the costs of billing by PowerTrack, and did not specifically lower their shipping rate based upon the advices identified by Stevens, then there can be no Government liability. This is true regardless of any of the other issues raised by Stevens – most notably whether the Government personnel who promulgated (or were aware) of the advices possessed contractual authority to bind the Government to continuation of reimbursement.[5] Put another way, even if Stevens is right in all of its legal arguments, it cannot prevail in this case unless it can prove actual reliance, which it has not done.

Stevens also makes a red-herring argument that, because the Air Force was not using PowerTrack at the time, Stevens "could not" include provision for the 1-percent PowerTrack fee in its rates. Complaint ¶ 24; SMSJ ¶ 24. This argument is unavailing because, as Stevens points out, there is a cost associated with

---

[5] We note that the lack of this fundamental proof, in and of itself, precludes granting of summary judgment in favor of Stevens because, at the very least, there is a genuine issue of material fact that Stevens has not addressed in its summary judgment briefing. RCFC 56(c). Further, it appears that TSPs were solicited to join this lawsuit without regard to whether they even knew about, much less demonstrated reliance upon, the advices issued by the Government. D. Reply App. 1.

both PowerTrack and non-PowerTrack billing that, presumably, TSPs incorporate into the single generic shipping rate. SMSJ 20-21. Thus, whether specifically identified to cover the cost of billing by PowerTrack or not, Stevens's shipping rates do not "overcharge the Government on shipments which were not billable under PowerTrack." Complaint ¶ 26. Instead, through use of a single shipping rate, the Government pays for each TSP's administrative costs regardless of whether one particular shipment (for the Army billed with PowerTrack) is more or less administratively expensive for the TSP to process than another (an Air Force shipment not billed with PowerTrack).

Stevens's opposition to the contrary, the fact remains that when Stevens prepared and submitted its shipping rates, the only "advice" regarding use of PowerTrack (and continued reimbursement of PowerTrack fees) was the unambiguous notice in the Federal Register that, a) the use of PowerTrack was mandatory, and, b) that the 1-percent fee would not be reimbursed after October 1, 2005:

> It is important to note that during this period, the participating TSPs will continue to receive the 1% PowerTrack Surcharge reimbursement fee **until** International Winter 05 (IW05) and Domestic Winter 05 (DW05) **or** Defense Future Personal Property (DPS) Rates are in effect. The Rate Solicitation for both IW05 and DW05 will be available to TSPs on March 15, 2005 and the rate filing period is scheduled for May 1, 2005 to July 15, 2005 with an effective date of October 1, 2005 for both cycles. For this reason, TSPs should file their rates for the IW05 and DW05 Winter Cycle and DPS

> assuming that PowerTrack and CWA will be used. DPS rates will be filed August 1-31, 2005 with an effective date of October 1, 2005.

(Emphasis supplied). 70 Fed. Reg. 5616; S. MSJ App. 70-71.

II. Stevens's Arguments Regarding Contractual Authority Are Irrelevant And Unpersuasive

The primary argument in our cross-motion for summary judgment, which we reaffirm here, is that there is no enforceable contract provision that entitles Stevens to reimbursement of the 1-percent PowerTrack fee paid by Stevens to U.S. Bank. XMSJ 7-9. In addition to that undeniable fact, we also showed in our cross-motion that, even if a hypothetical "contract" had been put in place Mr. Thomas's advice, Mr. Thomas lacked authority to bind the Government anyway. XMSJ 10-12. Without effectively responding, or even addressing, our quantum meruit and lack-of-contract arguments, Steven has focused myopically upon the issue of contracting authority and devoted its entire discovery effort and 27 pages of its 28-page opposition brief to that topic – which, because of the lack of an actual contract, is essentially a non-issue. S. Opp. 1-27.

As discussed above, the issue of Mr. Thomas's contracting authority only becomes relevant if Stevens demonstrates the existence of a contract that Mr. Thomas is purported to have modified or created. Not having done so, Stevens's lengthy and novel arguments concerning the contracting authority of other

Government employees (Mr. Hicks and Col. Amato), and their purported knowledge and "ratification" of Mr. Thomas's communications, are entirely irrelevant.

To the extent that Stevens's arguments require a response at all, we offer the following points. First, Stevens entirely concedes the argument we made in our cross-motion that Mr. Thomas, the author of the communications upon which Stevens relies, did not have the authority to bind the Government. For that reason alone, the contractual authority issue is resolved – the communications upon which Stevens bases its claim were not issued by a person with authority to bind the Government. Brunner v. United States, 70 Fed. Cl. 623 (2006)("[w]hen the United States is a contractual party, an additional requirement is that the government representative whose conduct is relied upon must have "actual authority" to bind the government in contract"). See also Tracy v. United States, 55 Fed. Cl. 679, 682 (2003); Humlen v. United States, 49 Fed. Cl. 497, 503 (2001); Toranzo-Claure v. United States, 48 Fed. Cl. 581, 583 (2001).

Faced with that reality, rather than giving up on that point, Stevens engages in a confusing and multi-level suggestion that Mr. Hicks, who was Mr. Thomas's supervisor, did possess contracting authority to "interpret" the Federal Register notice (which is distinctly not a contract) and, therefore, his authority is somehow imputed to Mr. Thomas to create a binding

commitment to continue the 1-percent reimbursement. S. Opp. 2-16.

One glaring problem with Steven's imputed authority argument is that it is simply inapplicable. The Federal Register notice was unambiguous (it did not need to be "interpreted") and it was not a contract. 70 Fed. Reg. 5616; S. MSJ App. 70-71. Next, even if relevant, Mr. Hicks's "interpretation" was not germane because the TSPs prepared and submitted their shipping rates prior to any of the advice from Mr. Thomas that is cited by Stevens.[6] Also, as a factual matter, there is a conflict in memory between Mr. Hicks and Mr. Thomas regarding the "interpretation" supposed by Stevens. Although, as noted in our response to interrogatory 11 (quoted at S. Opp. 4) Mr. Thomas recalls being advised by Mr. Hicks regarding continued reimbursement, Mr. Hicks himself neither had the authority to decide to continue reimbursement, nor does he believe he

[6] In an attempt to escape the case-determining fact that Mr. Thomas's communications were issued after the TSPs prepared and submitted their rates, Stevens distinguishes between the TSP's initial rates and their final rates. S. Opp. 5 n. 4. As Stevens admits, however, the final rates were simply "me too" rates, that is, the TSPs lowered their rates without independent computation, to the lowest of the initial rates that were submitted. Id. Thus, the final rates were not, as Stevens implies, based upon the advice that was issued between the initial and final rates. In simple terms, then, any actual consideration by the TSPs of whether their rates should account for the 1-percent fees was made before Mr. Thomas issued the communications that form the basis of Stevens's case.

communicated anything of the sort to Mr. Thomas and only became aware of Mr. Thomas's communications and the web-site posting after they were issued.[7] Declaration of Thomas Hicks, Reply App. 2, ¶¶ 3, 4. Steven's additional argument, to the effect that Col. Amato "should be found to have ratified Mr. Hicks' determination to continue reimbursement of the PowerTrack fee" (S. Opp. 16-19) is similar factually inapposite. Mr. Hicks simply did not make a "the determination to continue reimbursement" (S. Opp. 2) so the question of ratification by Col. Amato does not arise. Id.

Finally, in a tangled web of inapplicable contract-interpretation terms, Stevens argues that the Federal Register notice (which is not a contract), was interpreted differently by Col. Amato (who possessed contracting authority) and Mr. Hicks (who did not)(and it is factually untrue that they differed about continued reimbursement anyway (Reply App. 2)). According to Stevens, these purportedly different "interpretations" somehow created an "ambiguity" in the Federal Register notice itself,

---

[7] Virtually all of Stevens's opposition brief is based upon an assumption that our indication that Mr. Thomas recalled being advised by Mr. Hicks is the same as an acknowledgment that Mr. Hicks did, in fact, share the same recollection. For Stevens to make that assumption - given Stevens's propensity for reading our discovery responses very closely - is unjustified, especially given the fact that Stevens failed to take a single deposition in discovery despite its stated intention and request to the Court to do so. See Scheduling Order of June 22, 2006.

which, in turn, should be "construed . . . against . . . the drafter of the Federal Register notice. S. Opp. 19. First, this argument demonstrates Stevens's misapprehension regarding the very nature of the Federal Register notice (Stevens appears to believe it to be a contract that can be "construed against the drafter" – although Stevens does not identify the parties to this purported contract, or how it constitutes a contract in the first place). Second, even if it made sense that analyzing the Federal Register notice required "construing" it between differing interpretations of two Government officials, it is simply not true that Mr. Hicks and Col. Amato had different interpretations. Reply App. 2. Finally, there simply is no ambiguity in the Federal Register notice in the first place -- it clearly provides that the 1-percent reimbursement will be discontinued on October 1, 2005, unless the DSP system was in place prior to then. 70 Fed. Reg. 5616; S. MSJ App. 70-71. Moreover, Stevens's argument is internally contradictory anyway, because Stevens suggests that Mr. Hicks (who supposedly interpreted the notice to provide for continued reimbursement) issued the Federal Register notice, not Col. Amato. S. Opp. 26. Thus, following Stevens's bad logic, legal reasoning, and incorrect facts, construing the Federal Register notice <u>against</u> the drafter (Mr. Hicks) would mean that the notice means that the reimbursement will <u>not</u> continue past October 1, 2005. Inasmuch as that is exactly what the Federal

Register notice says, we at least agree that is how it should be construed (for whatever purpose) by the Court.

## CONCLUSION

For the reasons stated above, defendant respectfully requests this Court to deny plaintiffs' motion for summary judgment and to grant our cross motion for summary judgment.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Brian M. Simkin
BRIAN M. SIMKIN
Assistant Director

s/Brian S. Smith
BRIAN S. SMITH
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D. C. 20530
Tele: (202) 616-0391
Fax: (202) 353-7988

Attorneys for Defendant

December 1, 2006

CERTIFICATE OF FILING

I hereby certify that on November 20, 2006, a copy of the foregoing "DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Brian S. Smith

# REPLY APPENDIX

**Amato, Col Steven**

---

**om:** All-American Moving Group [webmaster@allamericanmoving.com]
**t:** Thursday, February 09, 2006 6:09 PM
**o:** lindasr816@aol.com
**Subject:** TSP Litigation

Click here if you have a problem viewing this e-mail
Or visit: www.allamericanmoving.com/lawsuit

ALL AMERICAN MOVING GROUP LLC

| | |
|---|---|
| **BULLETIN TO:** | **Agents and Interchange TSPs of All American Moving Group, LLC** |
| **FROM:** | **Gerald Wright, Chief Manager** |
| **DATE:** | **09 FEB 2006** |
| **SUBJECT:** | **TSP Litigation: PowerTrack Reimbursement Fee** |

Right-click here to download pictures. To help protect your privacy, Outlook prevented automatic download of this picture from the Internet.

- **The Facts**
- **SDDC forgot 1% in pre-rate filing Summary of Changes W05**
- **PowerTrack Plaintiffs Listing**
- **US Court PowerTrack Complaint Abba International etc.**

In response to SDDC's plan to ignore their written commitments to Industry to reimburse TSPs for the PowerTrack fee without providing for a commensurate rate ceiling hike and subsequent to DW05's I/F rate filing, All-American has joined 200+ other TSPs and filed suit against SDDC.

Our counselor Alan F. Wohlstetter, Esq. brought this action in Federal Court on 13 DEC 05. Additional litigants can join in and while there is a small upfront fee to file, the case is being taken primarily on a contingency basis by counsel.

As we all know, litigation is unpredictable however I would prefer to argue the attached facts provided by AMSA, instead of the SDDC position which can be likened to a 'because I said so'.

If you have a DoD approved TSP, I urge you to join this litigation.
***The deadline for doing so is 28 FEB 06 so don't delay.***

If you are interested in joining the litigation, you may contact…
Alan F. Wohlstetter, Esq.
DENNING & WOHLSTETTER
15 Connecticut Avenue, N.W.
Washington, DC 20006

Voice: 202-833-8884

**REPLY APPENDIX Page 1 of 4**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| STEVENS VAN LINES, INC., ET AL., Plaintiff, | ) | No. 05-1278 C |
| v. | ) | Judge Smith |
| THE UNITED STATES, Defendant. | ) | |

**DECLARATION OF THOMAS HICKS**

I, Thomas Hicks, declare under penalty of perjury, pursuant to 28 U.S.C. 1746, that the following statements are true and correct to the best of my knowledge.

1. I am the Deployment Director for Lean 6 Sigma, Surface Deployment and Distribution Command (SDDC) in Alexandria, Virginia. This is a program intended to improve processes, reduce costs and make the organization more efficient. I have been in this role since September 1, 2006. Immediately prior to that, I was the Deputy Chief of Staff for Strategy, Plans, Policy and Programs. I held that title from December 2005 through August 2006. Prior to that I was the Chief, Personal Property Division, SDDC. I served as the Chief, Personal Property Division from July 2002 until December 2005. A mission of the SDDC is to manage the DOD worldwide competitive procurement of HHG moving services. As the Chief of the Personal Property Division, I was responsible for the development and implementation of the Families First program while exercising

staff supervision and management control over all DOD personal property transportation.

2. As a result of my official duties with the SDDC, I am familiar with the complaint filed by the Transportation Service Providers (TSPs) and the issues underlying the complaint. I have firsthand knowledge of the Families First Program, the requirement for TSPs to be certified with U.S. Bank to use the PowerTrack system for transactions and payments for all shipments of personal property. I am familiar with the 1% fee that U.S. Bank charges TSPs for the use of PowerTrack. The statements in this declaration are based on my personal knowledge and information I have received in my official capacity.

3. I am aware that George Thomas advised TSPs that the PowerTrack fee would continue to be reimbursed until DPS through emails dated June 30, 2005, July 29, 2005, and August 10, 2005. I was not aware of these emails until after they were sent. I do not recall the exact timeframe when I became aware of the emails. I understand that George Thomas claims I informed him that the fee would be reimbursed until DPS. However, I never stated to George Thomas that TSPs would be reimbursed the PowerTrack fee beyond 1 October 2005 (for International rates) and 1 November 2005 (for Domestic rates). I also became aware of the web site posting, with similar incorrect advice that the PowerTrack fee would continue to be reimbursed. The web site posting was in the form of a Frequently Asked Question (FAQ), and was buried deep within the FAQs. I was not aware of the web site posting until sometime after the fact.

4. I do not have any specific authority to amend solicitations for matters of a substantive nature such as PowerTrack fee reimbursement. For such matters, I would have needed the approval of the Deputy Chief of Staff for Passenger and Personal Property, Colonel Keller or Colonel Amato. Without such approval, I could only make amendments of solicitations regarding minor administrative matters.

Thomas Hicks
THOMAS HICKS

20 Nov 06
DATE