# In the United States Court of Federal Claims

Case Nos. 05-1278 (consol.)
Filed: January 23, 2008
FOR PUBLICATION

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

STEVENS VAN LINES, INC., *et al.*,

*Plaintiffs,*

v.

THE UNITED STATES,

*Defendant.*

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

Motion for Summary Judgment; Contract, Implied Actual Authority; Mutual Intent

*Alan F. Wohlstetter*, DENNING & WOHLSTETTER, and *Stanley I. Goldman*, of counsel, Washington, D.C., for Plaintiffs.

*Brian S. Smith*, Attorney, with whom were *Peter D. Keisler,* Assistant Attorney General, *David M. Cohen*, Director, *Bryant G. Snee*, Assistant Director, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., for Defendant.

.

**OPINION AND ORDER**

**SMITH**, Senior Judge:

This case arises out of a procurement administered by Defendant's Surface Deployment and Distribution Command (SDDC) for the transportation of household goods and unaccompanied baggage of military service members and their families. Plaintiffs are Transportation Service Providers (TSPs) who contracted with SDDC to provide transportation services. The issue before the Court is whether SDDC is obligated to reimburse fees Plaintiffs paid to have a series of their shipping contracts processed electronically or whether the Plaintiffs should have included the fee in their filed rate.

Plaintiffs filed a Motion for Summary Judgment pursuant to Rule 56 of the Rules of the United States Court of Federal Claims seeking reimbursement of these fees arguing that they relied on the consistent oral and written advice of SDDC given prior to the final rate filings. The advice given to the TSPs was that SDDC would continue to reimburse the fee until a new procurement

became effective and therefore, Plaintiffs did not include the fee in their rate quotes. In response, Defendant has filed its Opposition to Plaintiffs' Motion for Summary Judgment and Cross-Motion for Summary Judgment and raises two arguments. First, Defendant argues that there was no express contract term providing for SDDC to reimburse the fee. Second, Defendant argues that although the Plaintiffs had communications with individual government employees who indicated that the reimbursement would continue, such employees were without authority to bind the government contractually.

After full briefing, oral argument and careful consideration, the Court agrees with the Plaintiffs that they are entitled to reimbursement of the payment processing fee and hereby **GRANTS** Plaintiffs' Motion for Summary Judgment on Liability.

## FACTUAL BACKGROUND[1]

### I. Families First personal property procurements

Plaintiffs, who are all Transportation Service Providers (TSPs), participated in Department of Defense (DoD) domestic and/or international procurements for the transportation of personal property of military service members and their families. DoD designated the Surface Deployment and Distribution Command (SDDC) as its sole manager for domestic and international personal property procurements, and SDDC solicits rate quotes from qualified TSPs twice per year. These rates are fixed and remain in effect for the duration of each six-month procurement cycle unless canceled. In general, the rate process involves two steps: (1) The Initial Filing (I/F) cycle in which the low rate level is established; and (2) The Me-Too (M/T) cycle in which the TSPs may adjust the final rates at which they agree to service shipments awarded to them during that cycle.

SDDC originally intended its new procurement, "Families First," to develop in two phases.[2] Phase I instituted a computerized billing and payment system known as "PowerTrack," which was administered by a company, U.S. Bank, for a fee of one-percent.[3] Phase II involved the complete transition to a best value standard, and although it was originally scheduled to become effective on October 1, 2005, it was indefinitely postponed.

PowerTrack started as a voluntary option in March 2004, and the TSPs that used PowerTrack

---

[1] The facts are taken from Plaintiffs' Proposed Findings of Uncontroverted Fact. The operative material facts are not in dispute. Def.'s Opp'n Br.; Cross-Mot. Summ. J. 2.

[2] Families First is a conversion of the SDDC personal property procurement from a lowest cost to a best value standard. Although the parties use "Families First" and "Defense Future Personal Property System" (DPS) interchangeably, DPS is technically part of Phase II.

[3] The fee is based on the total billed by each TSP for all services performed, and was increased in October 2005 to 1.1%

were reimbursed the one-percent fee charged by U.S. Bank. On February 3, 2005, SDDC published a Federal Register Notice, announcing that PowerTrack would be mandatory on April 15, 2005. 70 F.R. 5616-17. SDDC stated that during Phase I, which would be completed on or about June 30, 2005, TSPs would receive the reimbursement fee until International Winter 05 (IW05) and Domestic Winter 05 (DW05) or until DPS rates went into effect. SDDC also stated that the Rate Solicitation for IW05 and DW05 would be available on March 15, 2005, and scheduled the rate filing period for May 1, 2005, to July 15, 2005, with an effective date of October 1, 2005. Further, SDDC scheduled the rate filing period for DPS for August 1-31, 2005, with the same effective date of October 1, 2005. Finally, SDDC stated that the TSPs should file their rates for IW05, DW05, and DPS with the assumption that PowerTrack would be used. Both SDDC and the TSPs contemplated that the IW05 rates and DW05 rates were to serve solely as back-ups and would apply only if the Families First procurement was terminated.

On or about May 9, 2005, SDDC issued its IW05 solicitation covering the period October 1, 2005, through March 31, 2006. The I/F rates were to be filed by May 18, 2005, and the final M/T rates were to be filed by July 28, 2005. On or about May 15, 2005, SDDC issued its DW05 solicitation covering the period November 1, 2005, through April 30, 2006. The I/F rates were to be filed by May 23, 2005, and the final M/T rates were to be filed by August 26, 2005. On June 22, 2005, prior to the final M/T rate filings for IW05 and DW05, SDDC postponed the effective date of the DPS rates and institution of Phase II until February 1, 2006.

**II. Communications between the Government and TSPs.**

During Phase I , SDDC discussed Families First and PowerTrack on various occasions with TSPs and industry trade representatives. In the Federal Register, Thomas Hicks, former SDDC Chief of Personal Property, indicated that TSPs should contact George Thomas, SDDC Action Officer, for further information about PowerTrack, and Mr. Thomas similarly advised TSPs to direct PowerTrack inquiries to him. Mr. Thomas advised numerous TSPs that the one-percent PowerTrack fee would be reimbursed for Phase I IW05 and DW05, contrary to the language in the Federal Register, until Phase II went into effect.

Mr. Hicks' official job description as Chief of the SDDC Personal Property Division provides that he exercises the SDDC's delegated authority to "manage, allocate and distribute funds," and that he is "responsible for effective management of any [SDDC] contracts." Further, Mr. Hicks' duties include development of "personal property systems, policies and regulations in support of [SDDC] mission areas," and his "opinions and guidance are treated as if given by the DCSPPP [Deputy Chief of Staff for Passenger and Personal Property]."

Mr. Thomas' official job description indicates that he is the "Traffic Management Specialist in [SDDC] . . . [r]esponsible for management of DoD worldwide competitive procurement of HHG [Household Goods] moving services," and that he "[h]as primary responsibility for the conduct of professional, technical, and administrative work in management and procurement of worldwide HHG moving services affecting military/DoD civilian personnel and commercial industry." Further,

Mr. Thomas "[p]erforms the work necessary to develop, implement, maintain, modify, and integrate policy changes and commercial practices into the program," and is "[r]esponsible for incorporating Electronic Billing/Payment processes in the current/future PP Program." He has served in this capacity since May 2002.

Between June, 2005, and August, 2005, industry trade representatives had four e-mail communications with SDDC, three of which were with Mr. Thomas. (1) On June 7, 2005, Scott Michael, a representative of the American Moving & Storage Association (AMSA) sent an e-mail to Steven Savage, an official of IBM, the SDDC contractor administering PowerTrack, seeking clarification on whether the Government would continue to reimburse the PowerTrack fee. On June 8, 2005, Mr. Savage responded that the fee would be reimbursed until implementation of Phase II. (2) On June 30, 2005, Charles White of Household Goods Forwarders Association of America, Inc. (HHGFAA) requested by e-mail that Mr. Thomas confirm that SDDC would continue to reimburse the PowerTrack fee. Mr. Thomas affirmatively responded that "the 1% will continue as a pass through until DPS comes on line, however long it takes." (3) On July 29, 2005, Sue Fuchtman of The Day Companies, a billing and audit service provider for various TSPs, sent an e-mail to Mr. Thomas seeking clarification on the fee reimbursement. Mr. Thomas responded that the Government "will continue to pay the 1% until DPS rolls out." (4) On August 9, 2005, Mr. Michael requested by e-mail that Mr. Thomas confirm Mr. Savage's advice. Mr. Thomas responded by e-mail that the "TSP 1% reimbursement fee will continue for all TSPs participating in Phase I until DPS rolls out in Feb. [20]06."

Between the IW05 M/T rate deadline on July 28, 2005, and the DW05M/T deadline on August 26, 2005, SDDC stated on its website that "for now and during the remaining time of Phase I, they [TSPs] will bill the 1% fee the same way they are now. Reimbursement for the 1% will cease when DPS rolls out" in February 2006. SDDC posted the statement pursuant to a request by Mr. White, who wanted to direct TSPs to the SDDC website when they called to ask for clarification on the fee reimbursement.

On October 31, 2005, SDDC advised all TSPs by e-mail that the PowerTrack fee was no longer reimbursable, effective with IW05 and DW05. By an e-mail dated November 10, 2005, Col. Steven L. Amato, the SDDC official responsible for the personal property procurements, affirmed that the fee would not be reimbursed for services performed during IW05 and DW05. Accordingly, the Government did not reimburse the PowerTrack fee after IW05 and DW05 went into effect on October 1, 2005. A new procurement cycle began in April/May 2006.

Plaintiffs filed their Complaint in this Court, alleging four counts. Count I alleges that the Government breached its contract with the Plaintiffs, and counts II-IV allege entitlement under a *quantum meruit* theory.

## DISCUSSION

### I. Jurisdiction and Standard of Review

The Tucker Act confers jurisdiction upon the Court of Federal Claims to hear claims arising from "any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1) (2001). This Court has jurisdiction here because the matter arises from the Families First procurement contracts between the United States and Plaintiffs, who are all TSPs.

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Genuine disputes of material fact that may significantly affect the outcome of the matter preclude an entry of judgment. *Anderson*, 477 U.S. at 248. A genuine dispute of material fact exists when the evidence presented would permit a reasonable jury to find in favor of the non-movant. *Id.* In this case, summary judgment is appropriate because the operative facts are not in dispute, and the determinative issues are ripe for adjudication.

## II. The Contract

The elements of a valid contract with the United States are (1) mutuality of intent; (2) consideration; (3) lack of ambiguity in the offer and acceptance; and (4) the Government official whose conduct the contractor relies upon has actual authority to bind the Government in contract. *Anderson v. United States*, 344 F.3d 1343, 1353 (Fed. Cir. 2003), *see also Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947). Here, the case turns on whether the Government officials had the authority to bind the government and whether there was a mutuality of intent. Therefore, the Court will address these issues more fully.

### 1. Implied Actual Authority

The Government asserts that even though Plaintiffs had communications with individual government employees who indicated that the reimbursement would continue, those employees were without authority to bind the government contractually and, therefore, the one-percent fee cannot be reimbursed. The Court disagrees. To recover for breach of an express or implied-in-fact contract with the United States, Plaintiffs must establish "that the officer whose conduct is relied upon had actual authority to bind the government." *H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1575 (Fed. Cir. 1984). Although apparent authority is insufficient to bind the government, both express actual authority and implied actual authority suffice. *H. Landau & Co. v. United States*, 886 F.2d 322, 324 (Fed. Cir. 1989)(internal citations omitted). Implied authority derives from the Government's actions and intent. *Advanced Team Concepts, Inc. v. United States*, 68 Fed. Cl. 147, 151 (2005).

In general, a Government official has implied authority when "such authority is considered to be an integral part of the duties assigned to a Government employee." *Id.* (quoting J. CIBINIC & R. NASH, FORMATION OF GOVERNMENT CONTRACTS 43 (George Washington Univ. Gov't Contracts Program 1982) (citing *United States v. Bissett-Berman Corp.*, 481 F.2d 764, 768-69 (9th Cir. 1973);

*Fed. Crop Ins.*, 332 U.S. at 384 (finding implied authority when a Government employee possessed the authority to ensure that a contractor acquired raw materials necessary for the contract and to draw checks on the Government bank account). *See also Advanced Team Concepts*, 68 Fed. Cl. at 150-51 (finding implied authority given that the duties of scheduling, hiring, and paying invoices were central to the officer's work). In other words, a Government agent has implied authority when the power to contract is "appropriate or essential" to the performance of the agent's duties. *Brunner v. United States*, 70 Fed. Cl. 623 (2006).

In this matter, the Court finds that Mr. Hicks and Mr. Thomas had implied actual authority to guarantee that the Government would reimburse the PowerTrack fee to the TSPs. Mr. Hicks was the Chief SDDC Officer and was responsible for "effective management of contracts" and his "opinions and guidance are treated as given by the DCSPP [Deputy Chief of Staff for Passenger and Personal Property]," the official to whom he was accountable, and that he had delegated discretionary authority "to manage, allocate and distribute funds." Pls. Br. 15. Mr. Thomas' official job description indicates that he is the "Traffic Management Specialist in [SDDC] . . . [r]esponsible for management of DoD worldwide competitive procurement of HHG [Household Goods] moving services," and that he "[h]as primary responsibility for the conduct of professional, technical, and administrative work in management and procurement of worldwide HHG moving services affecting military/DoD civilian personnel and commercial industry." Further, Mr. Thomas "[p]erforms the work necessary to develop, implement, maintain, modify, and integrate policy changes and commercial practices into the program," and is "[r]esponsible for incorporating Electronic Billing/Payment processes in the current/future PP Program." Thomas Affidavit. It is clear to the Court from their job descriptions that these two individuals had implied authority to contract as was appropriate and/or essential to the performance of the agents duties. The contract here in question was well within the area of these duties.

**2. Mutual Intent**

Having determined that both Mr. Thomas and Mr. Hicks had implied authority, the Court turns to the issue of whether SDDC manifested an intent to obligate itself to reimburse the TSPs for the PowerTrack fee. To find an implied-in-fact contract, the claimant must demonstrate that there was an unambiguous offer to contract upon specific terms and mutuality of intent between the parties to enter a contract. *Garza*, 34 Fed. Cl. at 14. In determining whether mutuality of intent has been established, the inquiry is an objective one. *AG Route Seven P'ship v. United States*, 57 Fed. Cl. 521 (2003). "Acceptance of the offer must be manifested by conduct, which, reviewed objectively, indicates assent to the proposed bargain." *Id.* at 536-37.

Over two months after TSPs submitted their bids, the Government amended the solicitation by requiring TSPs to bill through PowerTrack by posting a Notice in the Federal Register. However, because the PowerTrack requirement was not added to the FAR, it was not part of the written contract. As neither the original solicitation nor the FAR required PowerTrack, it operated as a service that was additional to the terms of the initial bid. In the Federal Register Notice, which amended the terms of the initial bid, SDDC indicated that during Phase I, TSPs would continue to receive the PowerTrack reimbursement until IW05 and DW05 or DPS rates were in effect, and that

IW05, DW05, and DPS rates would all go into effect on October 1, 2005. However, when DPS, or Families First II, was postponed until February 1, 2006, Plaintiffs questioned whether the reimbursement would continue and were told that the reimbursement would continue.

In reviewing the notice and the correspondence between the Plaintiffs and government agents, it appears to the Court that both the agents and the Plaintiffs mutually intended that reimbursement would continue until IW05 or DW05 or until the start of DPS or Families First II. Specifically, Mr. Hicks advised Mr. Thomas that reimbursement of the PowerTrack fee was to continue and this advice was continued during the rate filing process. Between June, 2005, and August, 2005, industry trade representatives had four e-mail communications with SDDC, three of which were with Mr. Thomas, seeking clarification on whether the Government would continue to reimburse the PowerTrack fee. On each occasion Mr. Thomas confirmed that SDDC would continue to reimburse the PowerTrack fee and/or affirmatively responded that "the 1% will continue as a pass through until DPS comes on line, however long it takes or until it rolls out." Thomas email. It was not until well after the bids had been submitted, October 31, 2005, that SDDC issued a contrary interpretation. Therefore, the Court finds that during the rate-filing process, the parties mutually agreed to the reimbursement until the start of DPS. And because DPS or Families First II was postponed indefinitely and ultimately scrapped in its entirety, the Court finds that the necessary trigger to cease reimbursement never occurred and the TSPs are entitled to be reimbursed. To find otherwise would allow the Government to have its cake (lower rates) and eat it too (ending reimbursement after it was too late for Plaintiffs to change their rates).

## CONCLUSION

For the reasons set forth above, the Court hereby **GRANTS** Plaintiffs' Motion for Summary Judgment on Liability and **DENIES** Defendant's Cross-Motion for Summary Judgment. In light of this opinion, the Court need not address Plaintiffs' *quantum meruit* arguments.

The parties are directed to confer regarding the remaining issues in this litigation and shall thereafter contact the Judge's law clerk to set up a telephone status conference.

**IT IS SO ORDERED**.

s/ Loren A. Smith
Loren A. Smith
Senior Judge